IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 107,180

STATE OF KANSAS,
*Appellee*,

v.

OLIN L. COONES,
*Appellant*.


SYLLABUS BY THE COURT


1.

The Sixth Amendment to the United States Constitution guarantees in all criminal prosecutions that the accused shall enjoy the right to have the assistance of counsel for his or her defense. To be meaningful, the right to counsel guaranteed by this provision necessarily includes the right to effective assistance of counsel. This right is made applicable to state proceedings by the Fourteenth Amendment to the United States Constitution.


2.

To support a claim of ineffective assistance of counsel based upon deficient performance, a criminal defendant must prove:  (a) Counsel's performance was deficient and (b) counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial. The benchmark for judging any claim of ineffectiveness must be whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.

1

3.

The first prong of the test for ineffective assistance of counsel based upon allegations of deficient performance requires a defendant to show counsel's representation fell below an objective standard of reasonableness, considering all the circumstances. Courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.

4.

In this case, statements made over the telephone by a deceased victim to her mother in the course of an attack by an assailant are nontestimonial and admission of the statements into evidence does not violate the Confrontation Clause of the Sixth Amendment to the United States Constitution as applied in *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

5.

If a defendant makes a threat against a deceased victim prior to the incident causing the victim's death, that threat can be admitted at trial to show intent and motive.

6.

The statutory procedure for imposing a hard 50 sentence as provided in K.S.A. 21-4635 violates the Sixth Amendment to the United States Constitution as interpreted in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 2155, 2160-63, 186 L. Ed. 2d 314 (2013), because it permits a judge to find by a preponderance of the evidence the existence of one or more aggravating factors necessary to impose an increased mandatory minimum sentence, rather than requiring a jury to find the existence of the aggravating factors beyond a reasonable doubt.

Appeal from Wyandotte District Court; JOHN J. MCNALLY, judge. Opinion filed December 12, 2014. Conviction affirmed, sentence reversed, and case remanded with directions.

*Joanna Labastida*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Edmond D. Brancart*, chief deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Olin L. Coones was convicted of first-degree premeditated murder for killing Kathleen Schroll, with whom he had an ongoing civil dispute over an inheritance. The key evidence was testimony that Kathleen called her mother in a panic about 10 minutes before police discovered her body to say that Coones was in the house to kill her and her husband.

Coones raises four challenges to his conviction: (1) ineffective assistance of trial counsel; (2) erroneous admission of hearsay testimony concerning a confrontation between Coones and Kathleen a few days before the murder; (3) prosecutorial misconduct; and (4) cumulative error. We affirm the conviction.

Coones also challenges the constitutionality of his hard 50 sentence, which was imposed under K.S.A. 21-4635, as violating his right to a jury trial as guaranteed by the Sixth Amendment to the United States Constitution. We vacate the hard 50 sentence as required by *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 2155, 2160-63, 186 L. Ed. 2d 314 (2013), and *State v. Soto*, 299 Kan. 102, 124, 322 P.3d 334 (2014) (K.S.A. 21-4635 violates Sixth Amendment because it permits judge to find by preponderance of the evidence existence of aggravating factor necessary to impose increased mandatory

3

minimum sentence, rather than requiring a jury to make that finding beyond a reasonable doubt). We remand the case to the district court for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

Coones was charged with the first-degree premeditated murder of Carl and Kathleen Schroll, who were discovered dead in their home on April 7, 2008, at around 2:30 a.m. There were no signs of a struggle, and nothing was stolen. Kathleen died from a gunshot wound to the back of her head. Carl died from two gunshot wounds to the chest.

A cordless phone and a revolver were found lying near Kathleen's body. Her daughter said she had seen the gun in her mother's purse previously. Kathleen's DNA was found inside the barrel and on the trigger. The bullets located in the bodies were from the same caliber gun, but too deformed to establish they were fired from that revolver.

Coones was tried twice. In the first trial, he was acquitted of Carl's murder and convicted of Kathleen's. The district court granted a motion for new trial on the conviction because the State did not timely disclose computer evidence to the defense.

At his second trial, Coones was represented by the same attorney, Patti Kalb. The same prosecutor tried the State's case, and the same district court judge presided. The record does not contain a written stipulation, but both attorneys indicated they had agreed to retry the case based on the evidentiary rulings from the first trial. For the most part, the same evidence was admitted at the second trial. The exception was some additional computer evidence Coones presented about his computer usage the night of the murders.

Kathleen's mother, Elizabeth Horton, testified she was awakened by a phone call at 2:21 a.m. the night Kathleen died. Elizabeth looked at the caller ID and recognized

4

Kathleen's home phone number. She also recognized Kathleen's voice based on their daily phone conversations and because the caller said, "Mom." Kathleen told Elizabeth that Coones was "in the house and he said he is going to kill Carl. He said he is going to kill me, and he said he has his tracks covered so no one else will know who did it." Kathleen repeated that statement and said she had not called the police. Then, the line went dead. Elizabeth told her son, Randy Horton, what Kathleen said. Randy called 911.

An officer arrived at the Schrolls' home about 10 minutes later. When entering the house, police found Kathleen and Carl dead. Kathleen's body was lying on her back in the entryway, and Carl was in a bedroom.

Photographs of the mother's caller ID screen were admitted at trial. It showed an incoming call at 2:21 a.m. on April 7, and identified the originating phone number as the victims' home phone number and the caller as "Schroll, Carl." But the mother's phone records listed a different originating phone number and did not reflect Randy's outgoing 911 call. These discrepancies are discussed in more detail later.

A recording of Randy's 911 call was played for the jury. On it, Randy informed the 911 operator that Kathleen had just called and said Coones was at Kathleen's house "breaking in with a gun in his hand." As the operator questioned Randy, Elizabeth can be heard relaying information in the background. Randy described Kathleen's phone as going dead.

The State's theory for motive was that Coones was angry because he believed Kathleen, who had been his father's caretaker, had been stealing from his father and exercised undue influence to inherit part of his father's estate. Consistent with that theory, the prosecution presented evidence that Kathleen and Coones had prior confrontations. Elizabeth testified she spoke with Kathleen about Coones "practically every day. Every

5

time something new came up with him, [Kathleen] called [Elizabeth] immediately." Elizabeth said Coones would drive past Kathleen's home and that he "moved close to where she lived and drove past a lot."

Blair Hadley, Kathleen's daughter, testified over Coones' objection that she was riding with Kathleen the day before the killings and drove past a QuikTrip. Kathleen told Hadley she had passed Coones on her way into QuikTrip the day before, *i.e.*, 2 days before she was killed. Hadley further testified that her mother said Coones told her, "You are not going to be spending no more of my dad's money, bitch." Coones denied that a confrontation occurred, and a detective conceded that neither Kathleen nor Coones appeared on the store's security video.

Coones presented an alibi defense and advanced his own theory that Kathleen killed Carl in a murder-suicide. Regarding the alibi, Coones offered his family's testimony about his activity the night of the murders. His wife testified that Coones came to bed while their daughter and her fiancé were watching television. She said Coones only left the room once to go to the bathroom. She testified she heard him on the computer a few times during the night. Information from Coones' computer established that someone logged in under his profile and conducted internet searches at 1:07 a.m., and 4:51 a.m., which left a gap in activity during the time of the murders.

Coones' daughter and her fiancé testified they were watching a movie in the living room until 2:30 or 3 a.m. The daughter said Coones left the bedroom to go to the bathroom at around 2:30 a.m. and returned to the bedroom. The fiancé and Coones' wife both testified Coones would have had to pass the living room to leave the house.

Regarding his murder-suicide theory, Coones called a forensic scientist, Gene Gietzen, who testified that the velocity of blood spatter found at the victims' home could

6

not eliminate the possibility that Kathleen took her own life. Gietzen was also critical of the evidence collected and tested by the State. He said the State could have tested biological tissue found on Kathleen's ring to determine whether it belonged to her, and gunshot residue collection kits could have been tested to reveal whether residue was present.

The jury convicted Coones of first-degree premeditated murder for Kathleen's killing. His attorney, Kalb, filed a motion for judgment of acquittal and a motion for new trial. While those motions were pending, Kalb withdrew. Coones' new counsel filed a second motion for new trial, which alleged Kalb's performance fell below an objective standard of reasonableness.

The district court held an evidentiary hearing limited to whether Kalb's performance was deficient. The court indicated it would hold a second hearing on whether Coones was prejudiced by his attorney's performance if it found deficient performance. The court ruled Kalb's efforts did not fall below an objective standard of reasonableness and then denied the remaining issues for a new trial.

At sentencing, the State sought a life sentence with a mandatory minimum of 50 years' imprisonment. The district court agreed and imposed the hard 50 sentence after finding Coones engaged in conduct that caused a great risk of death to more than one person and committed the crime in an especially heinous, atrocious, and cruel manner.

Coones directly appeals to this court, which has jurisdiction under K.S.A. 2013 Supp. 22-3601(b)(3) (life sentence).

Coones contends Kalb was ineffective because she failed to: (1) object to Elizabeth's testimony regarding the phone call from Kathleen; (2) challenge the caller ID evidence indicating the call came from Kathleen and Carl's home telephone number; (3) secure an expert on caller ID spoofing; (4) give the defense expert the crime scene video; and (5) cross-examine police investigators on their failure to test Kathleen's hands for gunshot residue. Coones acknowledges this last claim was not raised in the motion for new trial.

*Standard of review*

Ineffective assistance of counsel issues involve mixed questions of law and fact. An appellate court reviews the district court's factual findings for substantial competent evidence and its legal conclusions de novo. *Miller v. State*, 298 Kan. 921, 928, 318 P.3d 155 (2014). When faced with an ineffective assistance of counsel claim raised in a motion for new trial and upon which the district court has held an evidentiary hearing, this court on review applies the standards articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). See *State v. Brooks*, 297 Kan. 945, 948-49, 305 P.3d 634 (2013); *State v. Adams*, 292 Kan. 151, 167, 254 P.3d 515 (2011).

The Sixth Amendment to the United States Constitution guarantees in all criminal prosecutions that the accused shall enjoy the right to have the assistance of counsel for his or her defense. To be meaningful, the right to counsel guaranteed by this provision necessarily includes the right to effective assistance of counsel. This right is made applicable to state proceedings by the Fourteenth Amendment to the United States Constitution. *State v. Cheatham*, 296 Kan. 417, 429-30, 292 P.3d 318 (2013).

To prove he received ineffective assistance of counsel Coones must demonstrate: (1) His counsel's performance was deficient; and (2) this deficient performance was prejudicial. 298 Kan. at 929 (citing *Strickland*, 466 U.S. at 687). "Deficient performance" means "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 687. In applying this test,

> "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation omitted.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation omitted.] There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. [Citation omitted.]" *Strickland*, 466 U.S. at 689.

In this case, the district court limited the evidentiary hearing and subsequent ruling to the deficient performance prong. But in his appeal, Coones argues both deficient performance and prejudice. The State argues this court should affirm the district court's conclusion Kalb was not deficient but in the alternative suggests that if we disagree the

correct remedy is to remand for a hearing on the prejudice analysis. We hold that Kalb was not deficient, rendering the prejudice analysis moot.

*Counsel not deficient for failing to object on Confrontation Clause grounds*

Coones claims Kalb was ineffective by not objecting to the mother's statements about the telephone call with Kathleen. He argues those statements are testimonial hearsay, admission of which is prohibited by the Sixth Amendment right to confront witnesses. See *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2003) (holding Sixth Amendment prohibits use of testimonial statements of unavailable witnesses unless defendant had prior opportunity to cross-examine witness). He does not assert any issue under the Kansas hearsay statute, K.S.A. 2013 Supp. 60-460, or address that statute's potential applicability.

Kalb testified she did not object to this testimony because she believed it was admissible since Kathleen was deceased. She also testified she believed the testimony was admissible under the Confrontation Clause. This claim is easily addressed by determining whether the evidence was admissible.

The admissibility of Elizabeth's testimony about Kathleen's telephone call to her hinges on a straightforward application of the Confrontation Clause. This court has previously noted that "[s]tatements to friends and neighbors about abuse and intimidation and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules." *State v. Bennington*, 293 Kan. 503, 510, 264 P.3d 440 (2011) (quoting *Giles v. California*, 554 U.S. 353, 376, 128 S. Ct. 2678, 171 L. Ed. 2d 488 [2008]). Determining whether a statement is testimonial is a "highly context-dependent inquiry," the purpose of which is to determine "whether the statement was made for creating an out-of-court substitute for testimony." 293 Kan. at 516-17.

10

In performing this inquiry, the court conducts an objective analysis of the circumstances of the declarant's statements, "considering such factors as whether the interrogator was a State actor or agent, whether there was an ongoing emergency, whether the encounter was formal, and whether the statements and actions of [the declarant and interrogator] reflect a prosecutorial purpose." 293 Kan. at 516; see also *State v. Brown*, 285 Kan. 261, 291, 173 P.3d 612 (2007) (setting out four-part test considering whether objective witness would reasonably believe statement would be used for later prosecution; whether interrogator was law enforcement or other government personnel; whether proof of facts relevant to later prosecution was primary purpose of interview; and whether interview was part of government investigation).

An objective evaluation of the circumstances here leads to the conclusion that Kathleen's statements were not testimonial and admission of the statements into evidence does not violate the Confrontation Clause of the Sixth Amendment to the United States Constitution as applied in *Crawford*, 541 U.S. at 68. Reasonable participants would not have viewed the primary purpose of the telephone call as preserving evidence for a later prosecution. See *State v. Miller*, 284 Kan. 682, 713, 163 P.3d 267 (2007) (statements by another to witness while at witness' home regarding both women's involvement with defendant nontestimonial because not made in presence of police officers or other authorities, were made during emotional conversation between the women, and were not subject to formalities and procedures otherwise associated with testimonial hearsay).

Kathleen did not make the statement at issue to law enforcement or another agent of the state, but to her mother. The call was not part of a government investigation. And there were no formalities associated with it. Additionally, Kathleen was speaking about an ongoing emergency: An intruder was inside her home and she was in immediate danger. Because this evidence would not have been excluded on Confrontation Clause

11

grounds, Kalb's failure to contemporaneously object to it on this basis was not objectively unreasonable.

*Counsel not deficient regarding caller ID evidence*

Coones criticizes Kalb's performance as to the caller ID evidence on two fronts: failing to object to admission of photographs of Elizabeth's caller ID display and failing to pursue an expert opinion on "call spoofing."

As to the failure to object, Coones argues that trial counsel was ineffective because "had [she] objected to the lack of foundation because it was not reliable based on the discrepancy between the caller ID screen and the phone records, at the very least, the issue would be preserved for appellate review." Coones appears to contend the foundation to admit the evidence was insufficient because the telephone records did not reflect what the caller ID displayed. He relies on *State v. Schuette*, 273 Kan. 593, 597-98, 44 P.3d 459 (2009), *disapproved on other grounds by State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006). Coones also argues the caller ID evidence was inadmissible hearsay.

Foundation evidence of a caller ID device's reliability is necessary for admission. See *Schuette*, 273 Kan. at 598. In *Schuette*, satisfactory foundation was laid from evidence that the defendant called a particular number when the defendant's name and telephone number appeared on the caller ID display, and witnesses who participated in the telephone call testified they knew and recognized the defendant's voice and identified the defendant as the caller. 273 Kan. at 598. The same foundational evidence is in the record here.

The mother testified she knew Kathleen's voice and recognized it as the voice of the person who called her. In addition, Carl's name and telephone number appeared on

the caller ID display. Coones was free to attack the weight of this evidence, as he did, with evidence of the discrepancy between the number displayed on the machine and the number listed in the business records for the call. But the discrepancy did not render the caller ID evidence inadmissible.

Coones' cursory argument that the caller ID display is inadmissible hearsay also lacks merit. See K.S.A. 2013 Supp. 60-460 ("Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible" unless an exception applies.). This court has previously held the readout on the caller ID display is not hearsay because it "is not the output of statements from an out-of-court declarant but merely the result of the device's operations." 273 Kan. at 598.

Because there was evidence of the caller ID's reliability and because the caller ID evidence was not hearsay, Kalb was not ineffective for failing to object to the evidence on foundation and hearsay grounds.

Coones next argues Kalb's performance was deficient because she failed to secure an expert witness on "call spoofing." He claims she should have "secured an expert to look into whether this was a call spoofing situation, and to explain his or her findings to the jury." We disagree.

At trial, the State had a detective read AT&T's disclaimer, which indicated "[AT&T] do[es] not maintain records of all incoming and local calls for all subscriber's account . . . the absence of a record of such a call will not be conclusive as to whether any call was or was not placed or received." The detective also read the following information about calls made from another carrier:

13

"When another carrier or telecommunications company is the originator of a phone call they do not always pass the telephone number to our switch. We are unable to capture the phone number in these cases. These types of calls may appear on the report in two different ways."

The report then provides two examples of phone number formats, neither of which is consistent with the number from which the report indicates the 2:21 a.m. phone call originated.

At the hearing on Coones' motion for a new trial, Kalb testified she did not hire an expert because, after researching call spoofing, she determined it was not vital to Coones' case. Additionally, she was concerned that upon digging further into the issue she would discover "more proof that it was, in fact, a true phone call."

In *Strickland*, the court explained:

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690-91.

The decision to forgo further inquiry into the possibility the call did not originate from Carl and Kathleen's home telephone number was not objectively unreasonable. Kathleen's statements to Elizabeth were the State's primary evidence against Coones. Kalb made a tactical decision based on the possibility that additional investigation into the discrepancy between the AT&T phone records and the caller ID would further

14

confirm the call's authenticity. With evidence of irregularities in AT&T's telephone records before the jury, Kalb remained free to raise the issue whether the caller ID evidence was reliable without adding additional strength to the prosecution's case. This claim is without merit.

*Counsel not deficient regarding crime scene video showing blood splatter*

At the hearing on the ineffective assistance claims, Kalb testified but the defense blood expert did not. The district court found that the crime scene video was listed in the detective's reports and that Kalb was aware of it and had recalled speaking with the expert about it. The court further found there was nothing in the video any different from the crime scene photographs introduced into evidence and used by the expert in his testimony.

In his brief, Coones claims "the district court erroneously held that Kalb had shown the video to the defense's expert witness." He then goes on to assert that this holding is not supported by substantial competent evidence. But this distorts what the district court found. The court's ruling was:

> "The crime scene video was listed in the reports of the detective. Ms. Kalb was aware of it. It's her recollection that she spoke with her expert about it. I don't know—I've never seen anything that it showed other than—that was any different from what the photographs showed. *As I say, her recollection is that she shared it with the expert.* He, according to counsel, has indicated otherwise. But he didn't testify to that here in court. *I don't believe that her not showing it to him constituted ineffective assistance of counsel.*" (Emphasis added.)

As is readily apparent, the statement that defense counsel "shared it with the expert" is actually a reference to Kalb discussing the video's existence with the expert—

not showing it to him. This is even clearer in view of the court's actual ruling on the deficient performance claim, which was based on the court's factual determination that counsel did not show the video to the expert.

At the hearing, Kalb testified that she and the expert knew about the crime scene video, but the expert "didn't seem to feel it was necessary" to view the tape. She conceded she did not insist that he view it. Substantial competent evidence supports the district court's finding that counsel did not show the video to the expert.

As a practical matter, the question presented is whether Kalb did enough to prepare the expert witness for trial. Kalb testified that she and the expert took the police crime scene photos back to the Schrolls' home to match the photos with the physical location where they were taken and that this was adequate for their purposes. Moreover, Kalb's undisputed testimony establishes that the expert was aware of the video's existence, and there is no evidence that the expert requested the video and Kalb failed to provide it. See *Mickey v. Ayers*, 606 F.3d 1223, 1246 (9th Cir. 2010) (no deficient performance in failing to provide tape of defendant's police interview to expert when expert did not claim he ever requested better version of transcript); *Card v. Dugger*, 911 F.2d 1494, 1512 (11th Cir. 1990) (no deficient performance in failing to provide certain records to mental health experts when no indication experts felt incapable of basing conclusions on information to which they had access).

The claim that Kalb was deficient for failing to provide the crime scene video to the expert witness is without merit.

*Gunshot residue testing*

Coones argues for the first time on appeal that Kalb's performance was deficient because she failed to cross-examine police investigators on the failure to test Kathleen's hands for gunshot residue. This argument is premised on a defense expert's testimony at the ineffective assistance of counsel hearing that Kalb could have "cross-examine[d] a crime scene officer or a lead detective about the failure to take a step such as the failure to obtain gunshot residue analysis" and this expert's conclusion that Kalb's performance was deficient because she failed to conduct cross-examination about residue "considering the defense theory."

But counsel at the hearing made no specific argument concerning this and the district court made no findings regarding the alleged failure to cross-examine police personnel about gunshot residue because that claim was not before it. The State argues this claim is not preserved because it was not specifically raised below, except in passing.

Normally, ineffective assistance of counsel claims are not reviewed until the district court has had an opportunity to conduct an evidentiary hearing. *State v. Williams*, 299 Kan. 1039, 1048, 329 P.3d 420 (2014). But in this case, the record quickly dispels the argument.

At trial, Kalb elicited testimony from one of the lead detectives in the case that police failed to conduct gunshot residue testing on Coones and the victims. And Coones' expert witness testified gunshot residue kits were collected and police could have tested them to determine whether Kathleen had gunshot residue on her hands. Kalb also referenced this omission during closing arguments and noted the defense expert could not eliminate the possibility that Kathleen shot herself in the head. Kalb stated, "They didn't do gunshot residue tests on her hands or Carl's. They didn't do any of the tests necessary."

17

Coones seems to argue Kalb's performance was deficient because she did not argue this point more forcefully, but the jury was clearly apprised of these facts. Coones' claim lacks merit.

THE QUIKTRIP TESTIMONY

Coones next argues the district court erred by admitting testimony about Kathleen's account of her convenience store encounter with Coones. He contends the evidence was inadmissible double hearsay and, even if it was not, it was irrelevant and the potential for undue prejudice outweighed the evidence's probative value.

*Standard of review*

A district court's decision to admit or exclude evidence is assessed using a three-step standard of review. First, the court addresses whether the evidence in question is relevant. *State v. Reed*, 300 Kan. ___, 332 P.3d 172, 183 (2014). Relevant evidence is that which has "any tendency in reason to prove any material fact." K.S.A. 60-401(b).

Relevance has two elements:  probative value and materiality. *State v. Marks*, 297 Kan. 131, 142, 298 P.3d 1102 (2013). Evidence is probative if it furnishes, establishes, or contributes toward proof. Probativity is reviewed for abuse of discretion. Evidence is material if it tends to establish a fact that is at issue and is significant under the substantive law of the case. Materiality is reviewed de novo. 297 Kan. at 142. Second, the court reviews de novo what rules of evidence or other legal principles apply. Finally, the court applies the appropriate evidentiary rule or principle. Review of the district court's application of evidentiary rules depends on the rule applied. *Reed*, 332 P.3d at 183.

18

*The convenience store testimony was relevant.*

Coones argues the evidence was not relevant because it did not tend to prove a material fact at issue in his trial. He argues that the idea Kathleen would not spend any more of his dad's money was not disputed because it was "just a matter of time" before criminal charges and civil suits would result in "justice for his father." In addition, though not presented specifically as a probativity argument, Coones contends the confrontation was capable of being viewed as a threat in hindsight, but could also have been a reference to the civil litigation between Coones and Kathleen. He points out there are "different ways" Kathleen could have been prevented from spending the money.

The State argues the evidence was relevant to prove plan, intent, motive, and premeditation. It argues if a person threatens and then carries out an act, the threat is evidence of plan and intent. It further argues when a threat includes the reason, the threat is evidence of motive.

"From early times this court has held that evidence of threats by an accused against the deceased is admissible as bearing on intent and state of mind." *State v. Anicker*, 217 Kan. 314, 316, 536 P.2d 1355 (1975). Additionally, "[p]remeditation may be inferred by the jury from various circumstances, including . . . threats and declarations of the defendant before and during the occurrence." *State v. Holmes*, 278 Kan. 603, 632-33, 102 P.3d 406 (2004) (citing *State v. Decker*, 275 Kan. 502, Syl. ¶ 5, 66 P.3d 915 [2003]).

"If a prior threat was made against a deceased victim, that evidence is properly admitted to show intent and motive. [Citation omitted.] 'If the threat was against a class of persons to which the deceased belonged, it would be admissible on the question of defendant's actions. . . . In addition, the threat might be admissible because of the

19

relationship between the defendant and the deceased under the circumstances of the case.' [Citation omitted.]" *State v. Tyler*, 251 Kan. 616, 630-31, 840 P.2d 413 (1992) (defendant's general threat to "take someone out" if someone tried to arrest him admissible at trial for murder of police officer).

Coones' statement during the confrontation with Kathleen was both material and probative and, therefore, relevant. The jury is charged with determining how to interpret the statement. One reasonable interpretation is that it was a threat, which tended to prove the killing was intentional and premeditated—both material facts at issue in the case. It also unequivocally conveyed Coones' desire to prevent Kathleen from further enjoyment of assets she received from Coones' father.

*Testimony was admissible*

Finally, Coones argues the evidence was inadmissible double hearsay and the district court erroneously admitted it. He argues there was insufficient evidence before the district court to support application of the hearsay exceptions advanced by the State at trial. The State argues Kathleen's statements to Hadley were admissible as statements of an unavailable witness under K.S.A. 2013 Supp. 60-460(d)(3) and that Coones' statement was admissible either as a declaration against interest under K.S.A. 2013 Supp. 60-460(j) or as a party admission under K.S.A. 2013 Supp. 60-460(g).

As a threshold matter, Coones also complains the trial court failed to make the findings necessary to apply the hearsay exceptions advanced by the State. And the record establishes that the district court did not explain the basis for admitting the statements, but the district court's silence on the reasoning supporting its ruling does not bar review because the required findings are implied. See *State v. Summers*, 293 Kan. 819, 828, 272 P.3d 1 (2012) (affirming district court's application of hearsay exception, despite

20

defendant's claim district court failed to explicitly make required finding statement was made in good faith).

The parties agree both Coones' statement and Kathleen's statement relating it to Hadley were out-of-court statements offered to prove the truth of the matters stated. Unless one of several exceptions are met, "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible." K.S.A. 2013 Supp. 60-460. "A statement within the scope of an exception . . . shall not be inadmissible on the ground that it includes [another hearsay statement] if such included statement itself meets the requirements of an exception. K.S.A. 60-463.

A district court's determination that hearsay is admissible under a statutory exception is reviewed for abuse of discretion. *Summers*, 293 Kan. at 827; *State v. Davis*, 283 Kan. 569, 573, 158 P.3d 317 (2006).

At trial, the State argued Coones' statement satisfied the declaration against interest exception defined in K.S.A. 2013 Supp. 60-460(j). But the ambiguity of Coones' statement to Kathleen likely renders this exception inapplicable. It is unclear how, construed literally, the message that Kathleen would not spend any more of Coones' father's money could be contrary to Coones' pecuniary interest; subject him to civil or criminal liability; or risk making him an object of hatred, ridicule, or social disapproval, to the extent a reasonable person would not have said it unless he or she believed it to be true. See K.S.A. 2013 Supp. 60-460(j); see, *e.g.*, *State v. Bird*, 238 Kan. 160, 174, 708 P.2d 946 (1985); *State v. Prince*, 227 Kan. 137, 146-47, 605 P.2d 563 (1980).

But there are other grounds to demonstrate the trial court reached the right result. First, K.S.A. 2013 Supp. 60-460(g) addresses party admissions: "As against a party, a

21

statement by the person who is the party to the action in the person's individual or a representative capacity and, if the latter, who was acting in such representative capacity in making the statement." Coones' statement fits this exception because Coones was a party to the criminal action. See *State v. Williams*, 268 Kan. 1, 11, 988 P.2d 722 (1996).

Second, Kathleen's account of the convenience store confrontation was admissible under the hearsay exception defined in K.S.A. 2013 Supp. 60-460(d). Kathleen was unavailable as a witness because she was deceased. Having been made the day after her encounter with Coones, the statement was made when the encounter was recently perceived by Kathleen and while her recollection was clear. See *State v. Robinson*, 293 Kan. 1002, 1026, 270 P.3d 1183 (2012). Kathleen's statement was necessarily made before the commencement of Coones' murder trial, and there is no evidence Kathleen had incentive to falsify or distort it when she related it to her daughter in casual conversation. See *Robinson*, 293 Kan. at 1026 (concluding condition met when there was "no suggestion [the] statements were not made in good faith or were made with an incentive to falsify or distort"); *State v. Johnson*, 255 Kan. 140, 151, 871 P.2d 1246 (1994) (condition met when record revealed no evidence of murder victim's incentive to falsify or distort cries for help during murder).

Each out-of-court statement containing this testimony satisfied an exception to the general exclusionary rule of K.S.A. 2013 Supp. 60-460. Coones' statement to Kathleen was admissible under K.S.A. 2013 Supp. 60-460(g), and Kathleen's statement to her daughter, in which Coones' statement was included, was admissible under K.S.A. 2013 Supp. 60-460(d)(3). Because the hearsay within the daughter's testimony and Coones' hearsay statement within that hearsay were both admissible, the testimony was admissible. See K.S.A. 60-463. The district court did not abuse its discretion allowing it into evidence.

22

*Probative value not outweighed by potential for undue prejudice*

Coones next argues the district court should have excluded the evidence because its probative value was outweighed by its potential for causing undue prejudice. The State responds that all evidence against a party is prejudicial, but this evidence was highly probative because the confrontation occurred close in time to the murder.

The district court may exclude evidence upon finding its probative value is substantially outweighed by its prejudicial impact. The district court's application of this rule is reviewed for abuse of discretion. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). The "prejudicial impact" at issue is that of "unfair prejudice." *State v. Francis*, 282 Kan. 120, 136, 145 P.3d 48 (2006).

Coones cites no authority in arguing the district court improperly balanced the evidence's probative value and potential for causing undue prejudice. He speculates the statement could be interpreted as commentary on the civil dispute between he and Kathleen but does not elaborate how the evidence might have provoked the jury to base its decision on an improper ground.

We hold that there is no indication Coones' statement would "elicit a response from the jury that might cause it to base its decision on emotion rather than reason." *Francis*, 282 Kan. at 136. It instead tended to explain his actions the night Kathleen was killed. The district court did not abuse its discretion by allowing the State to present this evidence.

Coones next argues the prosecutor committed misconduct by commenting on his expert witness' credibility and by stating facts not in evidence by representing Coones' latest settlement offer to Kathleen was not accepted.

*Standard of review*

Appellate review of a prosecutorial misconduct claim based on improper comments requires a two-step analysis. First, an appellate court decides whether the comments at issue were outside the wide latitude a prosecutor is allowed, *e.g.*, when discussing evidence. If so, there was misconduct. Second, if misconduct is found, an appellate court determines whether the improper comments prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Bridges*, 297 Kan. 989, 1012, 306 P.3d 244 (2013).

Prosecutors enjoy wide latitude in crafting closing arguments. *State v. Scott*, 271 Kan. 103, 114, 21 P.3d 516 (2001) (citing *State v. Miller*, 268 Kan. 517, Syl. ¶ 4, 997 P.2d 90 [2000]), *cert. denied* 534 U.S. 1047 (2001). This latitude allows a prosecutor to make reasonable inferences based on the evidence, but it does not extend so far as to permit arguing facts not in evidence. See *State v. Tahah*, 293 Kan. 267, 277, 262 P.3d 1045 (2011). But arguments must remain consistent with the evidence. If they are not, the first prong of the prosecutorial misconduct test is met and on appellate review the court must consider whether the misstatement prejudiced the jury against the defendant and denied the defendant a fair trial. See *Bridges*, 297 Kan. at 1014-15.

Appellate courts consider three factors in analyzing the second step: (1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the

prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the jurors' minds. But none of these factors individually controls, and before the third factor can override the first two, an appellate court must be able to say the harmlessness tests of both K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), have been met. *State v. McCullough*, 293 Kan. 970, 990-91, 270 P.3d 1142 (2012).

When both constitutional and nonconstitutional errors clearly arise from the same acts and omissions, an appellate court begins with a harmlessness analysis of the constitutional error. If the constitutional error is reversible, an appellate court need not analyze whether the lower standard for harmlessness under K.S.A. 60-261 also has been met. *Bridges*, 297 Kan. 989, Syl. ¶ 16. Under both standards, the party benefiting from the error bears the burden to demonstrate harmlessness. *State v. Herbel*, 296 Kan. 1101, 1110, 299 P.3d 292 (2013).

*Argument regarding expert's testimony was not misconduct*

Coones first argues the prosecutor improperly commented on the credibility of his expert witness, who testified about blood splatter, when he said:

"I mean no disrespect to Mr. Gietzen from Springfield, the expert hired by the defense. He is probably a nice man, but he added nothing meaningful or conclusive to your deliberations. You can find that he doesn't have the kind of current credentials that command respect for the things he says. He claimed to be, to interpret blood splatter, but he is not formally trained in blood splatter, and his last formal training of any kind was in 1999, and his certifications are expired or he said he didn't have them, and his association with very scientific organizations is a result of paying a membership fee, rather than passing proficiency testing. Mr. Gietzen came along well after the fact and offered his opinion. He just doesn't have the juice, the credentials for his opinion to be of any

25

relevant value. Essentially, he looked at much of the same evidence that you have been presented. It is not his opinion that matters. It is your interpretation of the evidence that matters now."

"Generally, prosecutors may not present their personal opinion of a witness' credibility to the jury because such comments constitute '"unsworn, unchecked testimony."'" *Bridges*, 297 Kan. at 1013 (quoting *State v. Marshall*, 294 Kan. 850, 857, 281 P.3d 1112 [2012]). But a matter that is a proper subject for cross-examination is equally suitable for discussion in closing arguments. See *State v. Wells*, 297 Kan. 741, 752, 305 P.3d 568 (2013); *State v. Britt*, 295 Kan. 1018, 287 P.3d 905 (2012). The prosecutor crosses the line into misconduct when the argument, though on a proper topic, sheds its evidentiary ties. See 297 Kan. at 752.

The record here supports the prosecutor's comments about the specific deficiencies in the expert's training and professional memberships. The topic was a proper one for cross-examination and argument. See K.S.A. 60-456(b) (limiting expert testimony to testimony by witness qualified as expert by knowledge, skill, experience, or training); *State v. Hobson*, 234 Kan. 133, 151, 671 P.2d 1365 (1983) (cross-examination may be permitted on matters subject of direct examination). The prosecutor's commentary did not amount to an unsworn opinion of the expert's credibility. It was a permissible, evidence-based argument.

*Comment about latest settlement offer was not misconduct*

Coones next argues the prosecutor commented on facts outside the evidence when he said:

"[Coones] offered first in that first required settlement offer zero. He wasn't going to give anything in order to settle that claim. He eventually agreed to offer a quarter of the benefit. That wasn't accepted."

Coones contends this was misconduct because there was no evidence the latest settlement offer had been rejected.

Prosecutors must confine their closing argument to matters in evidence and must not misstate the facts. *State v. Williams*, 299 Kan. 509, 542, 324 P.3d 1078 (2014). In determining whether misconduct occurred, this court has relied on fairly technical comparisons of the prosecutor's comments with the evidence at trial. See 299 Kan. at 542-43; *State v. Tahah*, 293 Kan. 267, 277-78, 262 P.3d 1045 (2011); *State v. Baker*, 281 Kan. 997, 135 P.3d 1098 (2006).

In this case, there was evidence Coones' offer to let Kathleen take 25 percent of the insurance proceeds to settle the lawsuit was transmitted to Kathleen's lawyer shortly before Kathleen's death and that the lawyer did not forward the offer to Kathleen before she died. The offer, then, was not accepted in the time between when Coones made it and Kathleen's death. Because the evidence sustains the prosecutor's comment that the offer was not accepted, the comment was not improper.

CUMULATIVE ERROR

Because there was no error, we need not address Coones' cumulative error argument. See *Reed*, 300 Kan. at ___, 332 P.3d at 185.

Coones' hard 50 sentence was imposed pursuant to K.S.A. 21-4635, under which statute the district court made findings of fact necessary to elevate Coones' minimum sentence beyond the default hard 25 life sentence for premeditated first-degree murder. This question already has been decided in Coones' favor. That statute is unconstitutional. *State v. Soto*, 299 Kan. 102, 124, 322 P.3d 334 (2014); see *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). The State does not argue harmless error review applies, so the court need not decide the question here. See *Soto*, 299 Kan. at 126 (deferring decision on whether harmlessness analysis applies because, on facts of case, error could not meet the test). Though in other recent hard 50 cases we have examined whether sufficient evidence supported imposing the sentence, we do not do so here because Coones does not raise the issue and because our decision that the sentence cannot stand because of the constitutional infirmity renders the question moot. *State v. Roeder*, 300 Kan. ___, 336 P.3d 831, 858-59 (2014); see also *State v. Holt*, 300 Kan. ___, 336 P.3d 312, 328-29 (2014).

Coones' conviction is affirmed, his hard 50 sentence is vacated, and the case is remanded to the district court for resentencing.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 107,180 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.