NOT DESIGNATED FOR PUBLICATION

No. 127,376

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN CLARK,
*Appellant*,

MEMORANDUM OPINION

Appeal from Cherokee District Court; MARADETH FREDERICK, judge. Oral argument held September 16, 2025. Opinion filed January 2, 2026. Affirmed.

*Corrine E. Gunning*, of Kansas appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., HURST, J., and JACOB PETERSON, District Judge, assigned.

PETERSON, D.J.:  This case is an appeal by John Clark after being convicted of four Jessica's Law offenses involving I.M., a twelve-year-old child. First, he argues that the district court violated his right to confrontation under the Sixth Amendment to the United States Constitution when it excluded evidence about I.M.'s allegedly false sexual abuse allegations against another person. He also argues that the district court improperly weighed aggravating factors against mitigating factors when it denied a request for durational departure under Jessica's Law and generally abused its discretion when it did not grant the departure. Finding no error, we affirm.

In October 2020, the Columbus Police Department (PD) interviewed I.M after her mother reported that I.M. had been sexually abused by Clark, a daycare provider. Columbus PD and the local child advocacy center (CAC) conducted an interview with I.M. later that month where she described years of sexual abuse at the hands of Clark.

In response to the interview, Columbus PD and Agent Cody Goforth with the Kansas Bureau of Investigation (KBI) questioned Clark about the allegations. During the interview, Clark said that he rubbed lotion on I.M.'s feet and legs. Clark claimed that the touching had nothing to do with sex, but that he eventually placed his mouth on I.M.'s vagina and breasts. Clark said he could not count how many times he touched I.M., but said he had done so off and on for quite some time. He told officers that he never thought his conduct toward I.M. was wrong because he had not touched I.M. for his own sexual pleasure.

Before trial, the State filed a motion in limine—a motion before trial to rule on evidence issues—seeking to exclude evidence about sexual abuse allegations that I.M. had made and potentially recanted against her male cousin. The district court granted the State's motion. Clark's counsel made a standing objection to the ruling.

The jury returned a guilty verdict on four charges. Before sentencing, Clark filed a motion for dispositional and durational departure—a motion for a less severe sentence than the standard under Kansas law.

At sentencing, the district court denied Clark's departure motion. It sentenced Clark to a life sentence with a mandatory minimum term of 25 years' imprisonment without parole on each count.

Additional factual and procedural history will be discussed as necessary. We begin with the motion in limine ruling.

ANALYSIS

I.    *The district court did not abuse its discretion by excluding evidence of I.M.'s other allegations.*

Procedurally speaking, Clark sought to introduce evidence about I.M.'s allegations and alleged recantation of those allegations to attack her credibility. The district court excluded that evidence by granting the State's motion in limine. Accordingly, Clark argues that the district court abused its discretion and insists that the district court's ruling requires a new trial. The State obviously disagrees.

*We review evidentiary decisions under a three-step framework.*

There are three steps to reviewing an evidentiary decision by district courts.

> "First, the court assesses whether the evidence is relevant. Relevant evidence is evidence that has 'any tendency in reason to prove any material fact.' . . . 'Second, the court reviews de novo what rules of evidence or other legal principles apply. Finally, the court applies the appropriate evidentiary rule or principle. Review of the district court's application of evidentiary rules depends on the rule applied.' [Citations omitted.]" *State v. Page*, 303 Kan. 548, 550-51, 363 P.3d 391 (2015).

A detailed discussion about the evidence the district court heard on the motion in limine and I.M.'s other allegations is essential to understand the district court's ruling and this opinion.

3

*Three witnesses testified at the motion in limine.*

Evidence began with Trent Martin, a former detective with the Cherokee County Sheriff's Office. According to Martin, I.M. stated in a child advocacy center interview that her cousin had inappropriately touched her "two to three months ago." By contrast, Martin testified that I.M.'s cousin and the cousin's parents said he had contact with I.M. the previous Christmas—around 10 months before the interview. Martin believed I.M.'s allegations against her cousin were supported by a separate illegal sexual conduct investigation where her cousin was a suspect.

I.M.'s father and grandmother also told Martin that I.M. recanted her accusations against her cousin, and that they had recorded those statements. Martin testified that he never received the recording despite requesting it and expressed concerns that family members were pressuring I.M. to drop her allegations.

Next to testify was Kaylee Peak, a former child protection specialist that interviewed I.M. Peak confirmed Martin's recollection of the discrepancy about the last time I.M. had seen her cousin. Peak also testified that if I.M. had retracted her statements, her investigation indicated I.M. was coerced into doing so. Peak did not detect any signs of untruthfulness during her interview with I.M.

The final witness, Ray Vazquez, a former police officer for Columbus PD, attended I.M.'s interview with Peak and confirmed that I.M. had made allegations of sexual abuse against her cousin. Vazquez also interviewed I.M's father. I.M.'s father agreed with I.M. that she had contact with her cousin three months before the interview.

*Evidence that could disprove I.M.'s allegations of sexual abuse against her cousin is relevant to her credibility.*

Generally, all relevant evidence is admissible unless otherwise prohibited by statute. K.S.A. 60-407(f). "'Relevant evidence' means evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). In other words, we must consider whether the evidence is (a) material and (b) probative. *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008).

The evidence of I.M.'s retraction, if believed, could show that I.M. has fabricated other allegations of sexual abuse. If she fabricated other allegations of sexual abuse, the argument goes, she may have fabricated the allegations against Clark. Certainly, evidence of that kind is probative. It is also material because whether Clark sexually abused I.M. is the very heart of this case. *State v. Coones*, 301 Kan. 64, 78, 339 P.3d 375 (2014) ("Evidence is probative if it furnishes, establishes, or contributes toward proof. . . . Evidence is material if it tends to establish a fact that is at issue and is significant under the substantive law of the case.").

But relevancy is only the first step. Having considered relevance, we now review de novo (i.e., without any deference to the district court) what rules of evidence or other legal principles control. *Coones,* 301 Kan. at 78. After that, we apply those evidentiary rules or principles.

*Evidence offered to disprove prior, similar allegations of sexual abuse may only be admitted if there is a reasonable probability that they are false.*

Typically, admissibility questions are governed by the rules of evidence found in Kansas statutes. Under K.S.A. 60-422(d), evidence of specific, unrelated occurrences only bearing on a witness' truthfulness or untruthfulness is inadmissible. Here, Clark

wants to admit evidence about I.M.'s other allegations to show that she is untruthful. That is explicitly prohibited under K.S.A. 60-422(d).

However, Clark argues that the court should have allowed such evidence under his Sixth Amendment right to confront witnesses against him. If he is correct, the Constitution controls. U.S. Const., art. VI, cl. 2 ("This Constitution . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

This court addressed Clark's position in *State v. Barber*, 13 Kan. App. 2d 224, 766 P.2d 1288 (1989). In that case, Barber argued that the district court incorrectly excluded evidence about the alleged victim's prior accusations of sexual abuse and the alleged falsity of those allegations. The court recognized that K.S.A. 60-422(d) barred that evidence but ultimately found that the defendant's right to cross-examination and confrontation required "prior false accusations of sexual abuse" to be admitted if a reasonable probability of falsity exists. 13 Kan. App. 2d at 226-27. That is the rule the district court applied.

Clark also argues that "recantation of a statement, standing alone" should be admitted without the need to find a reasonable probability of falsehood, based upon *State v. LeClair*, 83 Or. App. 121, 730 P.2d 609 (1986). While *Barber* cited *LeClair*, Clark's proposition was not adopted in *Barber*. Rather, the court simply agreed with *LeClair* that "despite the prohibition of the evidentiary rule, the confrontation clause demands that a defendant be permitted to cross-examine the complaining witness concerning prior false accusations under certain circumstances." *Barber*, 13 Kan. App. 2d at 226. The court in *Barber* then immediately defined those "certain circumstances" very narrowly:

> "In summary, we hold that despite the restriction of 60–422(d), in a sex crime
> case, the victim/complaining witness may be cross-examined about prior false

6

accusations, and if she denies making those accusations, defendant may put on evidence of those accusations. However, the prior accusations are admissible only after the trial court has made a threshold determination that a reasonable probability of falsity exists." *Barber*, 13 Kan. App. 2d at 227.

In short, Clark stretches *Barber* beyond its holding.

What is more, Clark's argument rests on the premise that I.M. voluntarily recanted in the first place—a position that the district court found to be dubious, at best, as discussed below. We decline to extend the rule announced in *Barber*, especially under the particular factual circumstances of this case, and find that the district court applied the correct rule when considering the admissibility of I.M.'s prior allegations.

Before moving on, we briefly note that we share another panel's recent skepticism of the impeachment rule specific to sex crimes announced in *Barber*. "Well into the twenty-first century, the narrow impeachment rule announced in *Barber* rests on a disquieting judicial-thumb-on-the-scales approach to sex crimes in which most victims are female." *State v. Genzel*, No. 120,602, 2020 WL 3481499, at *10 (Kan. App. 2020) (unpublished opinion).

*The district court did not abuse its discretion when it found no reasonable probability of falsehood.*

Having identified the rule to apply, our analysis shifts. Now we must consider whether the district court abused its discretion when it found no reasonable probability of falsehood existed for I.M.'s allegations against her cousin. See *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999) ("The admissibility of evidence lies within the sound discretion of the trial court."). "A trial court abuses its discretion when the act complained of '(1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact.'" *Page*, 303 Kan. at 555. The party alleging the error carries the

7

burden to show abuse of discretion. See *State v. Crosby*, 312 Kan. 630, 635, 479 P.3d 167 (2021).

The district court was not arbitrary, fanciful, or unreasonable when it found no reasonable probability of falsehood relating to I.M.'s accusations against her cousin. The grandmother's and father's story about I.M.'s retraction was allegedly supported by a recording, but that recording was never provided to law enforcement. Furthermore, the importance of the timing discrepancy highlighted by Clark was significantly reduced when I.M.'s father corroborated I.M.'s three-month timeline as opposed to her cousin's family's ten-month timeline. Martin and Peak (the KBI agent and child advocate, respectively) also found I.M.'s allegations to be credible.

Clark also argues that the district court erred because "[I.M.'s] recanting of her allegations against her cousin is enough to allow cross-examination regarding [her] prior allegation," and that "[i]f a person makes a statement and then recants, one of the two statements must be false." But those arguments assume I.M. *actually recanted*. The district court was quite obviously skeptical that I.M. even withdrew her statements, let alone did so voluntarily:

> "Martin learned that the family had recorded a conversation with [I.M.] where she—it was represented that she recanted her statements regarding abuse by [her cousin]. That video was never provided to him. And it's not clear that [I.M.] directly recanted her accusations to him.
>     . . . .
>     ". . . And December 23rd, 2020, [Peak] learned that the—in her words that the family had coerced [I.M.]to recant the allegations against [her cousin]. Again I didn't hear testimony from her that [I.M.] directly recanted to her. It was just told to her that that occurred through the family."

The district court also found that "two to three months" versus "10 months" difference highlighted by Clark to undermine I.M.'s truthfulness was not significant.

> "The difference in timeline I think, without something more to dispute [I.M.'s] account of the events is not enough. And you also have two witnesses saying that [I.M.'s] father . . . said that they were last—[I.M.'s cousin] and [I.M.] were last together July 4th, 2020, which pretty much matches up with [I.M.'s] timeline account that her last alleged abuse from [her cousin] occurred two to three months prior to her CAC interview in October of 2020."

The district court's decision to exclude evidence of I.M.'s alleged recantation of unrelated sexual assault allegations was not arbitrary, fanciful, or unreasonable, nor did the district court legally err. On the contrary, the district court's ruling was thorough and thoughtful, and drew reasonable inferences from the evidence presented.

II.      *The district court did not abuse its discretion when it denied Clark's motion for a departure sentence.*

Clark also argues that he presented substantial and compelling reasons for a durational departure to the sentencing grid from the standard sentence under K.S.A. 21-6627 (Jessica's Law). More specifically, Clark claims the district court legally erred by considering aggravating factors alongside the mitigating factors Clark presented in favor of his motion. Clark also claims the district court's denial of his motion was unreasonable, more generally. The State argues that the district court appropriately denied the departure motion. We agree with the State.

*Departures are permitted under Jessica's Law, but they require a unique analytical framework.*

Jessica's Law requires mandatory imprisonment for certain sexual offenses when an offender is 18 years old or older. K.S.A. 2015 Supp. 21-6627. All of Clark's

convictions are Jessica's Law offenses. See K.S.A. 2015 Supp. 21-6627; K.S.A. 21-5506(b)(3) (aggravated indecent liberties with a child); K.S.A. 21-5503(a)(3) (rape); K.S.A. 21-5504(b)(1) (aggravated criminal sodomy). These crimes carry a presumptive life sentence with a mandatory minimum term of 25 years' imprisonment, informally known as a hard 25. K.S.A. 2015 Supp. 21-6627(a)(1).

The district court may, however, grant a departure for substantial and compelling reasons on first-time Jessica's Law convictions. See K.S.A. 2015 Supp. 21-6627(d). A departure in this context allows district courts to use the more generally applicable sentencing grid, which has shorter presumptive sentences.

District courts must take three steps when evaluating departures under Jessica's Law. First, district courts must review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. *State v. Jolly*, 301 Kan. 313, 323-24, 342 P.3d 935 (2015). Mitigating circumstances the district court may consider include, but are not limited to: (A) the defendant's criminal history; (B) whether the defendant was mentally or emotionally disturbed at the time of the crime; (C) whether the victim was an accomplice in the crime committed by another person, and the defendant's participation was minor; (D) whether the defendant acted under extreme distress or under the substantial control of another person; (E) whether the defendant could not appreciate the criminality of their conduct or conform it to the requirements of the law; and (F) the defendant's age at the time of the crime. K.S.A. 2015 Supp. 21-6627(d)(2)(A)-(F).

Next, district courts must determine, based upon all the facts of the case, whether the mitigating circumstances rise to the level of "substantial and compelling reasons" to depart from the mandatory minimum sentence. *Jolly*, 301 Kan. at 324. Substantial reasons are those that are "'real, not imagined; something with substance and not ephemeral,'" while compelling reasons are those that force the court to "'leave the status quo or go beyond what is ordinary.'" *State v. Powell*, 308 Kan. 895, 914, 425 P.3d 309

10

(2018). Finally, if substantial and compelling reasons exist, the district court must state those reasons on the record. 308 Kan. at 908-09.

An appellate court will not reverse a district court's denial of a departure under K.S.A. 21-6627 unless the district court abused its discretion with its ruling. 308 Kan. at 902. Once again, "'[a] district court abuses its discretion when: (1) no reasonable person would take the view adopted by the judge; (2) a ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion is based.'" *Jolly*, 301 Kan. at 325. The party asserting the district court abused its discretion bears the burden of demonstrating an abuse of discretion. *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022).

> *The district court did not err when it considered but did not adopt the State's arguments at sentencing.*

At sentencing, the State explicitly argued against a departure, stating that several "aggravating factors" "negate if not outweigh" Clark's age and lack of criminal history, which are mitigating factors. The district court ruled as follows:

> "The court considering the nature and circumstances of the crime, *statements of counsel*, the letter from the victim, and the defendant, as well as the history, character and condition of Mr. Clark as evidenced by the presentence investigation the lowest minimum term which in the opinion of the court is consistent with public safety, the needs of the defendant, and the seriousness of the crime committed the court announces that for the primary offense of aggravated indecent liberties with a child, an off-grid person felony with a criminal history score of I the court sentences you to life in prison with a Hard 25 sentence. The departure motion is denied. The court does not find substantial and compelling reasons that would warrant a departure in this case. . . .
> "In testimony at trial, in his PSI, and again today he takes no responsibility for these crimes, continues to place the blame on the victim, which is unacceptable."
> (Emphasis added.)

11

Because the court acknowledged statements of counsel and the State asked the trial court to weigh aggravating factors against mitigating factors, Clark argues the court must have committed the same error.

But Clark's argument reads too much into the district court's reference. Certainly, the State's analysis—considering aggravating factors to outweigh mitigating factors in support of a departure—is contrary to the Supreme Court's instructions in *Jolly* and *Powell*. However, the district court itself never impermissibly weighed the aggravating circumstances against mitigating circumstances. It merely concluded that it did not find any substantial and compelling reasons to depart to the grid, an act that was within its discretion. It *noted* counsel's arguments and considered the "nature and circumstances of the crime," as the Supreme Court in *Jolly* encouraged district courts to do. See *Jolly*, 301 Kan at 323-24.

Clark also cites *State v. McCormick*, 305 Kan. 43, 378 P.3d 543 (2016), but that case is easily distinguishable. There, the district court specifically named an "'aggravating factor'" when it denied a departure motion. 305 Kan. at 50-51. The district court did not commit the same error here.

The district court's mere reference to the State's legal argument in its sentencing does not demonstrate an error in its decision. It was simply an acknowledgment of all arguments. There is simply no evidence that the district court incorrectly applied the *Jolly* framework.

*The district court did not act unreasonably when it denied Clark's departure motion.*

Clark also claims the district court's refusal to allow a departure in this case was unreasonable due to his lack of criminal history, the support of his daughter, and age. He

argues that the departure procedure was designed specifically to allow for a sentencing reduction from mandatory life sentences.

But district courts are not obligated to grant a motion for a departure simply because a mitigating factor may exist. *State v. Stafford*, 296 Kan. 25, 62, 290 P.3d 562 (2012). And showing a district court abused its discretion is a high bar. That is particularly true when challenging a district court's denial of a departure motion. See, *e.g.*, 296 Kan. at 62 (district court did not act unreasonably when finding criminal history score and lack of violent or dangerous crimes did not merit departure sentence); *State v. Klavetter*, 60 Kan. App. 2d 439, 453, 457, 494 P.3d 235(2021) (district court did not act unreasonably when finding criminal history score, among other argued reasons, did not merit departure).

Once again, the district court found that "the nature and circumstances of the crime, statements of counsel, the letter from the victim, and the defendant, as well as the history, character and condition of Mr. Clark" did not warrant a departure based upon age, family support, and criminal history. The district court's decision was far from unreasonable when it considered those factors, especially in light of the facts and circumstances of this case, discussed above. Clark has not demonstrated that the district court abused its discretion by denying his motion for a departure sentence.

CONCLUSION

The district court did not abuse its discretion by excluding evidence about I.M.'s prior allegations. It found no reasonable probability of falsehood when the evidence undermining I.M.'s allegations was itself suspect and insignificant. It also did not legally err by considering—but not adopting—the State's arguments about aggravating factors in

13

a Jessica's Law case. And finally, it did not abuse its discretion when it found no substantial and compelling reasons to depart to the sentencing grid.

Affirmed.