NOT DESIGNATED FOR PUBLICATION

No. 113,826

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHANE MISKELL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed July 15, 2016.
Affirmed.

*Janine Cox*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.


Before MCANANY, P.J., HILL and BRUNS, JJ.


*Per Curiam*: Shane Miskell appeals from the district court's judgment summarily
denying his K.S.A. 60-1507 motion. On appeal, Miskell contends that the district court
should have held an evidentiary hearing because his trial counsel was ineffective in: (1)
failing to be prepared for trial; (2) believing Miskell was guilty; (3) failing to seek an
expert witness to assess his mental health status before pleading guilty; and (4) failing to
ensure that his guilty plea was knowingly, intelligently, and voluntarily made. Because
each claim either lacks a sufficient factual basis or fails to demonstrate that trial counsel
was ineffective, we affirm.

1

FACTS

On April 11, 2011, the State charged Miskell with rape, aggravated criminal sodomy, and aggravated indecent liberties with his stepdaughter who was 8 years old at the time of the incidents. At a preliminary hearing, the child testified that in 2009 and 2010, she lived with her mother, her siblings, and Miskell. She further testified that while the family was living in Wichita, Miskell sexually abused her on multiple occasions between August 2009 and February 2010. She also indicated that the family eventually moved to Oklahoma for a brief period of time, where Miskell continued to sexually abuse her.

At the conclusion of the preliminary hearing, the district court granted the State's motion to amend the information, permitting it to add an alternative count of attempted rape to the original rape count as well as a second rape count. In addition, the district court determined that probable cause existed to believe that the crimes were committed and that Miskell committed the offenses. Accordingly, the court bound over Miskell for trial.

Subsequently, the attorney who Miskell had retained to represent him withdrew. The district court then appointed another attorney to represent Miskell. On October 14, 2011, Miskell filed a pro se motion to dismiss his new attorney. In his motion, Miskell alleged that his attorney had "failed to counsel [him] on the case" and "violated [his] trust and due process." Miskell further claimed that his attorney had failed to respond to his letters and follow through on his requests. The district court conducted a hearing on the motion on October 21, 2011, and denied the motion.

On January 24, 2012, Miskell filed a motion for reconsideration of his request to dismiss his counsel, maintaining that his attorney had not been keeping him reasonably informed. Miskell also noted in his motion that he had filed a disciplinary complaint against his attorney. It appears that a Deputy Disciplinary Administrator dismissed the complaint. After a hearing on the motion, the district court granted Miskell's request and appointed a new attorney to represent him. The new attorney withdrew 3 weeks later, and the district court appointed a fourth attorney—Ronald Lyon—to represent Miskell.

On May 2, 2012, Miskell sent the district judge a letter stating that he was frustrated with Lyon's performance in the case. Specifically, Miskell alleged that Lyon had "a biased and prejudicial view of the case." Rather than asking for Lyon's removal, however, Miskell simply asked the district court to provide him with all of the discovery materials produced to date so that he could "make an informed decision on this case."

Six months later, Miskell entered into a plea agreement with the State. Under the terms of the agreement, Miskell agreed to plead guilty to one count of rape and one count of aggravated indecent liberties with a child—both of which are off-grid crimes. In exchange for his plea, the State agreed to dismiss the three remaining counts and not to oppose Miskell's request for a downward departure to a gridbox sentence. It appears that Miskell was also able to procure an agreement with the State of Oklahoma that it would not prosecute him for any crimes he committed in Oklahoma against his stepdaughter between February and July 2010. The parties also agreed to ask the court to use the aggravated gridbox number at sentencing and for it to run the sentences consecutively.

The district court held a plea hearing on November 8, 2012. Initially, the district court reviewed the written acknowledgment of rights and entry of plea signed by Miskell. The district court then explained to Miskell the rights he was waiving by entering a guilty plea and confirmed that he understood the rights he was waiving. Thereafter, the

prosecutor read the terms of the plea agreement into the record, and Miskell agreed that the recited terms were consistent with his understanding of the plea agreement.

Moreover, during the plea hearing, the district court also had the following colloquy with Miskell:

"THE COURT:  Now, I noticed that you are on—on your acknowledgment of rights document you identify a couple of—looks like maybe a couple prescription medications, Remeron and Haldol; is that correct?

"THE DEFENDANT:  Yes, Your Honor.

"THE COURT:  Are you on anything else?

"THE DEFENDANT:  No, Your Honor.

"THE COURT:  Are you taking anything else?

"THE DEFENDANT:  No, Your Honor.

"THE COURT:  And what are these kind of drugs for in your mind?

"THE DEFENDANT:  For my PTSD.

"THE COURT:  Have you been on these drugs for a while?

"THE DEFENDANT:  Yes, Your Honor.

"THE COURT:  Have any adverse side effects leveled out since you've been on these drugs—or this medication for a—

"THE DEFENDANT:  Yes, Your Honor.

4

"THE COURT: In regard to these drugs, do you believe they are affecting your ability to understand your rights in any way today?

"THE DEFENDANT: No, Your Honor.

"THE COURT: And I will ask you a broader question. Within the last 24 hours have you used or consumed any alcohol, medication, or other drugs to the extent that your ability to understand your rights would be impaired in any way?

"THE DEFENDANT: No, Your Honor.

"THE COURT: Are you happy with the services of Mr. Lyon?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Are you satisfied with how the Court has treated you in this process?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: With all this in mind, is it still your choice and your desire to waive your rights and enter a plea of guilty to Counts 1 and 5 in the amended information?

"THE DEFENDANT: Yes, Your Honor."

Next, Miskell pled guilty to rape and aggravated indecent liberties with a child after he agreed on the record that there was an adequate factual basis to convict him of both counts. At that point, the State moved to dismiss the remaining counts, which the district court granted. Thereafter, the district court accepted Miskell's plea and found him guilty of rape and aggravated indecent liberties with a child.

5

On January 31, 2013, Miskell filed a motion for durational departure, asking the district court to depart to a gridbox sentence. In support of his motion, Miskell asserted that a court-appointed psychologist had evaluated him and concluded that he presented a low risk for recidivism and that he did not have significant features of psychopathy. Specifically, Dr. Jarrod S. Steffan—the court-appointed psychologist—noted in his report that Miskell had been diagnosed with posttraumatic stress disorder (PTSD), major depressive disorder, and "personality disorder not otherwise specified with borderline and dependent features." The report also indicated that Miskell had been diagnosed with dysthymic disorder and a disruptive behavior disorder.

Further, Dr. Steffan made the following observations about Miskell's orientation and thought processes during an examination:

"Mr. Miskell was alert and familiar with person, place, time, and situation. His thought processes were organized and goal directed. He neither reported symptoms nor evidenced signs of delusional thinking or perceptual distortions such as hallucinations. The content of his expressed thoughts further revealed no obsessions, compulsions, or phobias but there were themes of generalized suspiciousness, resentment, self-aggrandizement, and externalization of blame."

Dr. Steffan also noted that Miskell reported no major difficulties with attention, concentration, or working memory, even though his recent and remote memory functions were poor, particularly for recalling childhood events. Ultimately, Dr. Steffan opined that Miskell had a low risk of sexual recidivism as well as no "significant features of psychopathy and . . . no more psychopathic characteristics than the 'average' adult offender."

On March 12, 2013, the district court held a sentencing hearing and considered Miskell's motion for a downward departure. At the outset of the hearing, the district judge explained to the parties that he had read the entire psychological evaluation prepared by

6

Dr. Steffan. Thereafter, Dr. Steffan testified that he was unable to conclude that a mental disorder accounted for or played a role in Miskell's sexual offense. At the conclusion of the hearing, the district court granted Miskell's request to depart to a gridbox sentence. Further, the district court followed the terms of the plea agreement and imposed consecutive sentences of 165 months' imprisonment for the rape count and 61 months' imprisonment for the aggravated indecent liberties with a child count, resulting in a total sentence of 226 months. Miskell did not file a direct appeal.

About a year later, on March 3, 2014, Miskell filed a K.S.A. 60-1507 motion in Sedgwick County District Court. In his motion, Miskell claimed that Lyon had provided ineffective representation. On the same day, Miskell filed a pro se motion seeking to withdraw his guilty plea, raising the same claims that he did in his K.S.A. 60-1507 motion. The district court appointed an attorney to represent Miskell on his motions. Moreover, the State responded to Miskell's motions by asking the district court to summarily deny them.

On November 10, 2014, the district court conducted a hearing on the motions. Miskell was not present at the hearing, and the parties presented no evidence. The district judge noted that he had conducted Miskell's sentencing hearing and remembered Dr. Steffan's testimony about his psychological evaluation of Miskell. Although Miskell's attorney requested an evidentiary hearing, the district court summarily denied the motion.

In denying the motion, the district judge explained that Lyon was not required to secure an expert witness regarding the effects of the prescription medication because Miskell represented at the plea hearing that he had taken the medication for a long time and that it had not affected his ability to decide whether to enter a plea agreement. The district judge also stated that he did not believe that Dr. Steffan's evaluation warranted further investigation into Miskell's psychological state. Regarding an allegation that Lyon should have requested DNA testing, the district judge indicated that the State could not

obtain DNA testing in this case because the crimes were not reported until long after they occurred. As such, the district judge concluded that "Mr. Lyon can't be faulted for requesting a test on the evidence that didn't exist."

The district court also determined that no manifest injustice had been established and noted that Miskell received a "very, very favorable disposition" because Lyon was able to negotiate a dismissal of three counts, a departure to a gridbox sentence, and an assurance that no charges would be brought for crimes he may have committed in Oklahoma. As such, the district court believed that Miskell received effective representation from Lyon. Accordingly, Miskell's motions were denied and he timely filed a notice of appeal.

ANALYSIS

On appeal, Miskell contends that the district court was required to hold an evidentiary hearing on his K.S.A. 60-1507 motion. To obtain relief, the movant must establish by a preponderance of the evidence that either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 60-1507(b); Supreme Court Rule 183(g) (2015 Kan. Ct. R. Annot. 271).

Furthermore, movants bear the burden to prove that their K.S.A. 60-1507 motion warrant an evidentiary hearing. To do so, a movant's contentions must be more than conclusory; the movant must state an evidentiary basis in support of the claims, or the basis must be evident from the record. *Grossman v. State*, 300 Kan. 1058, 1062, 337 P.3d 687 (2014). The district court is not required to hold an evidentiary hearing on a K.S.A. 60-1507 motion if the motion together with the files and record conclusively indicate that

8

the movant is not entitled to relief and if the motion does not present substantial issues of fact. *Moncla v. State*, 285 Kan. 826, 830, 176 P.3d 954 (2008). However, once the movant satisfies this burden, a court must "'grant a hearing, unless the motion is "second" or "successive" and seeks similar relief.'" *Grossman*, 300 Kan. at 1062 (quoting *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 [2011]).

When a movant files a K.S.A. 60-1507 motion, a district court has three options:

"(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing." *Fischer v. State*, 296 Kan. 808, 822-23, 295 P.3d 560 (2013).

Our standard of review depends on which of these options the district court chose to follow. When the district court has reviewed the motion, files, and records; held a preliminary hearing; and summarily denied a K.S.A. 60-1507 motion—as occurred here—we are in as good of a position as the district court to consider the merits. Hence, our review in this appeal is unlimited. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014); see *Robertson v. State*, 288 Kan. 217, 227, 201 P.3d 691 (2009).

Here, Miskell asserts several allegations of ineffective assistance of trial counsel. Both our federal and state constitutions guarantee the right of a criminal defendant to the effective assistance of counsel. *State v. Brown*, 300 Kan. 565, 574-75, 331 P.3d 797 (2014). To establish ineffective assistance of counsel, one must show (1) that counsel's performance was constitutionally deficient, which requires a showing that counsel made errors so serious that counsel's performance was less than that guaranteed by the Sixth Amendment to the United States Constitution; and (2) that counsel's deficient

9

performance prejudiced the defense, which requires a showing that counsel's errors were so severe as to deprive the defendant of a fair trial. *State v. Coones*, 301 Kan. 64, 70, 339 P.3d 375 (2014).

Under the first prong, it must be shown that counsel's representation fell below an objective standard of reasonableness. *State v. Betancourt*, 301 Kan. 282, 306, 342 P.3d 916 (2015). In considering this prong,

> "'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation omitted.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation omitted.] There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. [Citation omitted.]'" *Coones*, 301 Kan. at 70 (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

Under the second prong, one must demonstrate "'a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the

evidence before the judge or jury.'" *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012) (quoting *Bledsoe v. State*, 283 Kan. 81, 90-91, 150 P.3d 868 [2007]).

Generally, it is "'within the province of a lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions.'" *Sola-Morales*, 300 Kan. at 887 (quoting *Thompson v. State*, 293 Kan. 704, 716, 270 P.3d 1089 [2011]). Hence, the movant bears the burden of showing that trial counsel's actions were not the product of strategy. 300 Kan. at 888.

Miskell argues that Lyon was ineffective by (1) not being prepared for trial; (2) believing he was guilty; (3) not seeking an expert witness to address his mental health issues; and (4) not ensuring that he knowingly, intelligently, and voluntarily pled guilty. Miskell also argued before the district court that Lyon failed to request DNA evidence. This argument, however, has been abandoned on appeal. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013).

Initially, Miskell claims that his plea was not voluntary because Lyon failed to advise him of the range of permissible penalties as well as discuss with him other possible options. See *Kelly*, 298 Kan. at 970. In order to show that ineffective assistance of counsel caused a defendant to enter an involuntary plea, however, the defendant "must show that counsel's performance fell below the standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *State v. Solomon*, 257 Kan. 212, 223, 891 P.2d 407 (1995) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59, 88 L. Ed. 2d 203, 106 S. Ct. 366 [1985]).

In the present case, Miskell grounds his argument about the voluntariness of his plea in his bare assertion that Lyon was not prepared for trial. This leads him to speculate that "[i]f the accused does not believe counsel is prepared to defend him at trial, he may

11

well see entering a plea as his only alternative." But to warrant an evidentiary hearing, Miskell must state an evidentiary basis in support of his claims or the basis must be clear from the record. See *Grossman*, 300 Kan. at 1062. The same is true of his allegation that Lyon did not believe in Miskell's innocence. We, however, can find nothing in Miskell's K.S.A. 60-1507 motion or in his brief that indicates any evidentiary basis for these claims.

Moreover, a review of the record on appeal reveals that Miskell's plea was voluntary entered. At the plea hearing, the district court noted that the acknowledgement of rights and entry of plea as well as the plea agreement were both signed by Miskell. The acknowledgement plainly lists the rights that Miskell agreed to waive when he entered his guilty plea. In addition, the second paragraph of the acknowledgment states, "I know of no reason why my mental competence should be questioned. I have not taken any drugs or medication during the past 48 hours, except Remeron/[Haldol]. Any such drugs or medications do not affect my ability to understand my rights or the consequences of this plea."

Before accepting Miskell's plea, the district court asked Miskell about the medications he was taking and whether they affected his ability to knowingly enter a plea. Miskell assured the district court that they did not affect his ability to understand his rights in any way. And after the district court read aloud each right, Miskell confirmed that he understood the consequences of his plea as well as the rights he was waiving by pleading guilty to the reduced charges.

Furthermore, in a certificate attached to the acknowledgment, Lyon stated that he had fully advised Miskell of his rights. In particular, Lyon acknowledged that he (1) read and fully explained the allegations in the case to Miskell; (2) fully apprised himself and Miskell of the evidence and applicable law; (3) told Miskell how his criminal history was used to determine his sentence; (4) explained to him the maximum penalty for each

12

count; (5) affirmed that Miskell read or was read the acknowledgement and plea agreement and that they fully discussed both documents; (6) believed that the plea was voluntarily and understandingly made; and (7) told Miskell that the court was not bound by the plea agreement's terms, that it could reject the agreement, and that it could impose any legal sentence it deemed appropriate.

The record also indicates that prior to negotiating his plea agreement, Miskell did not hesitate to advise the district court of his complaints about his legal representation or to ask his attorney's removal. In fact, Miskell even filed a disciplinary complaint against one of the four attorneys who represented him in this case. Even though Miskell complained about Lyon in a letter to the district court dated May 2, 2012, he did not request that he be removed. Moreover, Miskell did not complain about Lyon's representation again—nor did he suggest that his plea was not voluntary—until nearly 2 years later when he filed his K.S.A. 60-1507 motion in March 2014. Conclusory assertions lacking an evidentiary basis are not sufficient for relief. *Gilkey v. State*, 31 Kan. App. 2d 77, 82, 60 P.3d 351, *rev. denied* 275 Kan. 963 (2003). As such, we find that the record does not show that Lyon's representation fell below the standard of reasonableness.

As the district court noted, Lyon's representation of Miskell appears from the record to have been quite effective. Lyon was not only able to negotiate a favorable plea agreement in this case but was also able to persuade authorities in Oklahoma to agree not to prosecute him for similar incidents that allegedly occurred there. After the State filed the amended information in this case, Miskell faced two counts of rape of a child under 14 years of age—with one of the counts having the alternative of attempted rape—as well as one count aggravated criminal sodomy and one count of aggravated indecent liberties with a child. All of the counts except for the attempted rape count called for a presumptive life imprisonment with a mandatory minimum term of 25 years. See K.S.A. 21-4643(a)(1)(B)-(D). Yet, Lyon was able to convince the State to dismiss all but one

13

count of rape and the indecent liberties with a child count. In addition, the State agreed not to contest a downward departure to a gridbox sentence. Thus, we find that the record supports the district court's conclusion that Lyon provided effective legal representation to Miskell.

Lastly, Miskell argues—without elaboration—that Lyon should have retained an expert witness before sentencing to assess his mental state. At the time Miskell committed these offenses, it was "a defense to a prosecution under any statute that the defendant, as a result of mental disease or defect, lacked the mental state required as an element of the offense charged." K.S.A. 22-3220; see *State v. Barnes*, 293 Kan. 240, 264, 262 P.3d 297 (2011). A review of the record, including the report from Dr. Steffan, reveals that Lyon was not ineffective for failing to retain an expert witness to assess Miskell's mental state for trial. As Dr. Steffan's report showed, Miskell was familiar with his surroundings; his thought processes "were organized and goal directed;" and he had no major difficulties with attention, concentration, or working memory. Moreover, Dr. Steffan's evaluation of Miskell indicated that he had a low risk of sexual recidivism and exhibited no more characteristics of psychopathy than the average adult offender. Finally, Dr. Steffan was unable to conclude that Miskell's actions were the result of a mental disorder.

Notably, the district judge who conducted the sentencing hearing also presided over Miskell's K.S.A. 60-1507 motion. The judge stated on the record at the hearing on the K.S.A. 60-1507 motion that he recalled Dr. Steffan's testimony about Miskell's psychological evaluation. See *Gilkey*, 31 Kan. App. 2d at 79 (appellate courts are more inclined to apply the presumption that a court finds all the facts necessary to support dismissal of a motion when the judge was also the presiding judge in the criminal case). Based on this recollection, the district judge found that Dr. Steffan's evaluation did not support a viable defense of mental disease or defect. Accordingly, we do not find that the

record supports Miskell's claim that Lyon was ineffective for failing to pursue a mental disease or defect defense. See *State v. Hedges*, 269 Kan. 895, 914, 8 P.3d 1259 (2000).

Affirmed.