NOT DESIGNATED FOR PUBLICATION

No. 124,381

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DANIEL OJEDA,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed January 20, 2023. Affirmed.

*Brittany E. Lagemann*, of Olathe, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and HURST, JJ.

PER CURIAM: Daniel Ojeda appeals the district court's denial of his K.S.A. 60-1507 motion, alleging multiple claims that his trial attorney rendered ineffective assistance of counsel. The district court properly found that substantial competent evidence demonstrated that Ojeda's trial counsel did not provide ineffective assistance of counsel. While Ojeda's atypical challenge to two of his charges created unique defense opportunities, the district court properly found that Ojeda's trial counsel's strategic choices to assert those defenses were not deficient. This court affirms the district court's denial of Ojeda's K.S.A. 60-1507 motion.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2004, a jury convicted Ojeda of aggravated kidnapping, rape, aggravated criminal sodomy, attempted aggravated kidnapping and attempted rape for his attacks on two women on two separate occasions. The facts supporting his convictions are relevant to Ojeda's current claims and were summarized by a panel of this court on direct appeal:

"To set the stage for our discussion of the legal issues, we must first go through the facts in some detail. We will begin with the version presented by the victims and investigating officers.

"The first attack occurred on April 7, 2004. H.T., a 23-year-old woman, was walking on the Tomahawk Creek Trail in Leawood. She noticed a man who twice rode past her on his bike. When he came back a third time, he got off the bike and put her in a "bear hug" from behind, pinning her arms to her side. He dragged her off the trail and into the woods; he then forced her down on her hands and knees before pulling down her pants and underwear. He fondled her breasts, pulled down his pants, and then penetrated her with his penis first vaginally and then anally.

"H.T. said that the man also rubbed his penis on her and may have penetrated her a second time vaginally, although she wasn't sure. At some point, though, he ejaculated, which she felt on her thigh. H.T. said she didn't consent to any of this and that the man rode away on his bicycle afterwards. She described him as about 5-foot, 10-inches tall, 185 pounds, 25 to 30 years old, clean shaven, and Hispanic, with dark hair and a decent build.

"The second attack took place April 15, 2004. C.H., a 29-year-old woman, was jogging on the same trail. She said she was attacked from behind by a man who tried to pull a duct-tape gag over her mouth. C.H. grabbed the man's forearms, screamed, and threw her elbows back. The attacker dropped the duct tape and ran away. She didn't see his face but said the man was between 5-foot, 9-inches and 5-foot, 11-inches tall, extremely fit, and had dark hair.

2

"While investigating the second attack, officers found a witness, Mark Adams, who had seen a Hispanic man put his bike into the back of a tan Ford Explorer and quickly leave the parking lot along the recreational trail. So officers staked out the parking lot the next day watching for vehicles matching that description. Ojeda drove in, and officers talked with him. Ojeda provided both fingerprints and a saliva swab for DNA testing. Ojeda's fingerprints matched some found on duct tape discovered at the scene of the attack, and his DNA matched DNA from semen found on H.T.'s jeans, shirt, and underwear.

"The State charged Ojeda with rape and aggravated criminal sodomy for the April 7 attack and attempted rape for the April 15 attack. In addition, because H.T. had been moved from the visible trail into a less visible area before she was raped, the State charged Ojeda with aggravated kidnapping against her. The State also charged Ojeda with attempted aggravated kidnapping against C.H. based on the premise that, had he gained physical control of her, Ojeda had been about to move her away from the trail just as he had done with H.T.

"In trial testimony, Ojeda admitted that he had attacked H.T. with the intent to rape her. But he said he ejaculated before any penetration could occur because he was so excited and nervous. He also denied having drug H.T. away from the trail path. Ojeda didn't testify about the events of April 15.

"During deliberations, the jury sent a question to the judge: 'Can we consider the events of April 7th to determine the intent of [the] April 15th events?' The judge responded: 'Evidence of the events of April 7 may be considered for the purpose of proving the defendant's intent on April 15.'

"The jury convicted Ojeda on all charges, and the district court sentenced Ojeda to a controlling prison sentence of 330 months." *State v. Ojeda*, No. 105,438, 2012 WL 3289944, at *1-2 (Kan. App. 2012).

During initial pretrial proceedings, Ojeda was represented by appointed public defenders, but before trial in August 2009, Ojeda hired private defense counsel who this court will refer to throughout this opinion as trial counsel or trial attorney.

*Trial Counsel's Conduct and Trial Strategy*

Ojeda's trial counsel first appeared on Ojeda's behalf at a scheduling conference on September 3, 2009, where he obtained a continuance of an imminent motions hearing to allow him time to prepare. He stated that he had discussed this rescheduling with Ojeda, and the motions hearing was then scheduled for October 28, 2009.

Trial counsel filed six motions in October 2009, including a motion to reconsider bind-over on count five. For the attempted rape charge related to the attack on C.H., trial counsel argued:

> "[C]ount five of the complaint states Defendant did: 'approach [C.H.] from behind when [C.H.] was jogging on a secluded path in a wooded park area and placed a length of duct tape across the face of [C.H.].' Those are the only facts laid out in the complaint to support the charge of attempted rape.
>
> "The State presented evidence at Preliminary Hearing regarding both of the incidents, and Defendant was bound over on all five charges.
>
> "Based on a reading of count five of the complaint as a separate charge from the four other counts, there is no indication of any intent to rape [C.H.]. Nothing in the factual scenario accusing Defendant of placing duct tape on [C.H.]'s mouth from behind suggests any type of sexual motivation by Defendant. It is only through a combined reading of count five with the counts one through three from the incident involving [H.T.] that any sexual intent could be presumed. It is improper to consider any of the evidence relating to this separate incident when deciding to bind Defendant over on count five. The consideration of a separate incident would be governed by K.S.A. 60-455 which states in relevant part, 'evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong

4

as basis for an inference that the person committed another crime or civil wrong on another specified occasion . . .

> "Bluntly put, the events of April 15th must stand on their own and support the charge in count five on their own, and even viewed in 'best light,' for the State the evidence presented at preliminary hearing fails in that regard."

At the hearing on the defense motions on October 28, 2009, trial counsel reiterated the arguments he made in his motion to reconsider bind-over on count five and explained that he and his client had "not requested separate trials at this juncture." The district court noted during the hearing that "[i]f [trial counsel] wants to pursue a motion to sever, I will certainly consider that. The law is very—pretty concise about when the defendant might be entitled to a severance of the issues." The court ultimately denied the motion and the trial was set for April 19, 2010.

During trial, on direct examination by his attorney, Ojeda testified that he attacked H.T. on April 7, 2004, but did not penetrate her because he prematurely ejaculated while pulling down her pants and pulling out his penis because he was "very excited and very nervous." Upon further questioning from his attorney, Ojeda testified that his premature ejaculation was how his semen got on H.T.'s jeans, shirt, and underwear. Ojeda further testified that neither prior to nor after ejaculating did he penetrate H.T. Trial counsel did not ask Ojeda questions about the attack on C.H. on April 15, 2004.

Upon cross-examination, Ojeda testified that he intended to rape H.T. when he attacked her on April 7, 2004. Ojeda further testified that the idea of raping women excited him and that attacking a woman walking alone in the park and pulling her pants and panties down also excited him. Although he intended to rape H.T., Ojeda maintained on cross-examination that when he pulled H.T.'s pants down and pulled his penis out, he immediately ejaculated and never penetrated her.

During cross-examination, the State attempted to question Ojeda about the attack on C.H., but trial counsel objected and claimed the questioning was beyond the scope of his direct examination. He emphasized in his objection that his "direct [examination] was specifically about April 7th" and that he "was just very specific about the date." The district court ultimately sustained the objection and explained that "anything related to the [C.H.] piece of this, Counts IV and V, are outside the scope. Any prior statements the defendant made about the [H.T.] piece of this, Counts I, II, and III, are fair game." After Ojeda's testimony the defense then rested.

During trial counsel's closing argument, he emphasized that none of Ojeda's DNA was found on H.T.'s genital area. He stated that an experienced doctor had tested numerous anal, cervical, and vaginal swabs and "not one cell [of Ojeda] was found" on H.T. in those areas. He argued that "the State would have you [the jury] believe based upon their theory that my client inserted himself multiple times into [H.T.] and left not one single cell." He then reiterated that, in his opening statement, he stated that he was not going to ask the jury to find Ojeda innocent, but ask for a verdict that was consistent with the evidence. He argued that the evidence related to the attack on H.T. supported *attempted* rape and kidnapping, not *completed* rape.

During deliberations, the jury sent out several questions, including "'Can we consider the events of April 7th to determine the intent of April 15th events?'" Ojeda's attorney objected to the State's proposed answer of "yes" on the grounds of joinder, K.S.A. 60-455 evidence, and because the jury already received instructions regarding the issue. Specifically, trial counsel argued that jury instruction No. 9 already informed the jury that all the evidence may be considered regarding intent and that any answer beyond referring the jury to the instructions it already had would be "underlining or overemphasizing a specific instruction." The district court responded to the objection by explaining that it had

6

"reviewed Instruction No. 9 which does say you can consider all of the evidence in the case, but I am worried about Instruction No. 10 which is a pattern instruction, 6807 which also says, 'Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it uninfluenced by your decision as to the other charge.'"

When reading jury instruction Nos. 9 and 10 together, the district court was concerned that the jury would misunderstand the instructions and mistakenly believe it could not consider all the evidence when evaluating each separate count. The district court also observed that

> "I don't think we considered a motion to sever in this, but we did consider a motion to reconsider the bind over on Count V, and I think I probably stated for the record at the time without Counts 1, II and III I don't think he would have been bound over on Count V.
> "So it has always been the law of this case that the Counts I, II and III were considered as part of the evidence of the defendant's intent as to counts—well, as to Count V."

Ultimately, the district court decided to send the following response to the jury: "'Evidence of the events of April 7th may be considered for the purpose of proving the defendant's intent on April 15th.'" The jury then reached verdicts in the case and found Ojeda guilty on all five counts. The first three counts related to the attack on H.T. on April 7, 2004: (Count I) aggravated kidnapping; (Count II) rape; (Count III) aggravated criminal sodomy. The final two counts related to the attack on C.H. on April 15, 2004: (Count IV) attempted aggravated kidnapping and (Count V) attempted rape.

On July 9, 2010, the court sentenced Ojeda to 165 months of incarceration for each of Counts I and II: 123 months imprisonment for Count III and 61 months of incarceration for each of Counts IV and V. The court ordered each sentence to run consecutively, with Ojeda's maximum sentence to be 330 months of imprisonment.

7

*Ojeda's Direct Appeal and K.S.A. 60-1507 Motion Alleging Ineffective Assistance of Trial Counsel*

Trial counsel filed a timely notice of appeal, and the public Appellate Defender's Office represented Ojeda in his direct appeal. One of Ojeda's arguments on direct appeal was that the district court erred in response to the jury's question, "'Can we consider the events of April 7th to determine the intent of [the] April 15th events?'" A panel of this court held that "[t]he district court's answer was legally correct" and found "no abuse of discretion in its response." 2012 WL 3289944, at *5. This court further affirmed Ojeda's convictions and determined it did not have jurisdiction to consider Ojeda's challenge to his sentence, and affirmed the district court's judgment. 2012 WL 3289944, at *1-6. The Kansas Supreme Court denied review. (297 Kan. 1253).

Ojeda filed a timely pro se K.S.A. 60-1507 motion on February 12, 2014, arguing that his trial attorney provided ineffective assistance of counsel. Relevant to this appeal, Ojeda asserted three specific claims. First, Ojeda argued that "[trial attorney's] failure to file a motion to sever Counts 1, 2, and 3, from Counts 4, and 5 constitute[d] ineffective assistance of counsel." Second, Ojeda argued that "[trial attorney's] placing . . . Ojeda on the stand at trial to incriminate and give evidence against himself for [the] jury to use to consider Counts 4, and 5 constituted ineffective assistance of counsel." Finally, Ojeda asserted a cumulative error claim.

The district court appointed Ojeda counsel to represent him in his K.S.A. 60-1507 motion proceedings and held an evidentiary hearing on July 16, 2015, where both Ojeda and his trial counsel testified. On direct examination by Ojeda's 60-1507 counsel, Ojeda testified that his trial counsel "told me I ha[d] to testify" and that trial counsel failed to explain why Ojeda needed to testify or explain that he was not required to testify. Ojeda's 60-1507 attorney asked Ojeda, "Did [trial counsel] tell you how to testify because it would help your case, or did he just say, you're required to testify?" Ojeda responded,

8

"[he] told me not to say anything the first—about the two—two of the charges. That in doing so I would be able to take care of the three—other three charges by saying that with the other two charges." The 60-1507 attorney then asked, "So, if I understand you right, by saying you were guilty of two of the charges, then the strategy was to say you weren't guilty of the other three charges?" Ojeda responded affirmatively but said, "When you say, if I prove my innocence the first three charges, I don't have to say nothing. I prove my innocence on other two charges." Ojeda appeared to testify that the trial strategy, as he understood it, was for Ojeda to testify about the first three charges to prove his innocence and then he would not have to testify about the remaining two charges because he would have also proven his innocence as to those charges as well.

Ojeda testified that he intended to prove his innocence on the first three charges by "[t]elling the truth as to what happened." Ojeda explained that his trial counsel told him that if he testified about what happened in the first three charges, the jury would most likely not find him guilty and thereby also assume he was not guilty of the remaining two charges. Ojeda then testified that the prosecution did, in fact, ask him questions about the remaining two charges—which he intentionally had not testified about on direct—and that is why the jury found him guilty of all five charges. Ojeda said that he believed the State would not have met its burden if Ojeda had not testified at trial. Ojeda also testified that he knew the difference between being told he had to testify and being told testifying would help at trial, and that his trial counsel told him he had to testify. Additionally, Ojeda said that his trial counsel never told him that his refusal to testify could not be used against him by the State.

The State asked Ojeda, "[your trial counsel's] theory of defense was, as to counts one, two, and three, was that you never completed the crimes, and therefore you're guilty of attempted—attempt to commit the counts one, two, and three?" Ojeda responded, "It wasn't a theory. He told me to tell the truth. I did what he told me to do. I never did what they accused me of." The State then asked Ojeda, "You were the only person that could

9

present that evidence to the jury, correct? . . . You were the only one there that could testify that you ejaculated prior to committing the crimes?" Ojeda responded, "Yes." The State then asked, "So you had to testify in order to present that argument?" Ojeda answered, "That's what my attorney told me to do."

Trial counsel then testified regarding his trial strategy. He testified that he considered filing a motion to sever counts four and five from counts one, two, and three but ultimately decided not to. He testified that his memory of the decision was not perfect because it had been five years, but that he remembered discussing the decision "ad nauseam" with Ojeda. He also explained that the decision not to seek severance was partially motivated by Ojeda's potential exposure at sentencing if he were convicted in both trials and the general nature of the defense. According to him, if he had tried to sever the counts, there was no guarantee the court would have granted it, and—even if it had—if Ojeda were convicted in the first trial, the State could have sought to admit that evidence under K.S.A. 60-455 in the second trial. He further explained that his defense was especially focused on sentencing and how different convictions would impact Ojeda's sentence, and that "the thrust of [his] defense" was to get convictions of *attempted* crimes.

Trial counsel further testified that he and Ojeda discussed Ojeda testifying "at length." And although the attorney did not "have a specific recollection of an oral conversation from five years ago" explaining that it was Ojeda's choice to testify, he explained that telling clients it is their decision whether to testify is his "normal course of representation" and he did not remember "doing it differently."

Trial counsel also testified that "[Ojeda's] testimony at trial was consistent with what we had talked about," and that he did not ever recall telling a client to lie on the stand, "[s]o if [Ojeda] says I told him to tell the truth, I probably did say something to that effect." While he said that he did not specifically remember telling Ojeda that he had

10

to testify to pursue their defense strategy, he testified: ". . . I believe, given our defense, that I probably did recommend to him, strongly, that he would have to testify to make our defense believable." He explained that, as he recalled, his defense strategy focused on the first three counts related to the attack on H.T. because Ojeda's sentence would be less if the convictions were limited to level three felonies, as in the attempted charges, and he was not convicted of a severity level one felony.

Trial counsel also testified that he likely limited the scope of his questioning of Ojeda on direct examination "so that [Ojeda] couldn't be cross examined with respect to" counts four and five. He explained that he "discussed it at great length" with Ojeda and, to the best of his memory, wanted to avoid exposing Ojeda to cross examination on the other counts. He further testified that he and Ojeda "talked about that the defense was relative to the level one charge," and that, prior to trial, he prepared Ojeda for trial and went over Ojeda's testimony with him. Trial counsel explained that, as he recalled, "[Ojeda] was going to testify that there wasn't a completion of the crime that would constitute a level one felony."

On October 15, 2015, the district court denied Ojeda's K.S.A. 60-1507 motion in a ruling from the bench, and explained:

> "Frankly, I didn't find [Ojeda's testimony] to be credible. [Trial counsel] filed
> many motions in this case. He's a thorough lawyer, and I think his testimony was
> credible, but he did file numerous motions on behalf of the defendant, a motion to include
> testimony of sexually transmitted disease, motion for discovery, two motions in limine, a
> motion for bill of particulars, and a motion to reconsider bind over at the preliminary
> hearing, which is unusual quite frankly, but he did do that. I don't want to say unusual,
> but just extra thorough, quite frankly, to ask for that. A motion for a new trial, which was
> ten pages. It wasn't just a boilerplate motion, but had specifics in it, and his motions were
> well done.

11

"In [trial counsel's] testimony he had indicated he had been practicing law since 1986. He had, I thought, very good reasons for his theory of the defense after speaking with the defendant, and I thought that was reasonable under all the facts of the case.

"He indicated he discussed at length with the defendant whether he would testify. He always tells defendants it's their choice, it's one of their own choices. He does give recommendations, but he lets them decide that. He said he had discussed severing the case. He had discussed that at ad nauseam with the defendant and because of the nature of the case and all the facts surrounding that he chose the path that he did. He had good reasonings for his questioning, I think, of the victims in the case and how that evolved, and he didn't want the defendant to be cross-examined regarding the second victim. He said he had prepared the defendant for his testimony. He discussed with him not testifying, and their theory of defense. So I found his testimony to be credible and not deficient in any way.

"In hindsight if the defendant, you know, doesn't like maybe the result, but that is not the standard here.

"The defendant did appeal his conviction. He had been convicted of all counts at the jury trial. He did appeal. The Court of Appeals confirmed those convictions.

"In his 60-1507 petition he claimed that [his trial attorney] was ineffective for failing to cover [*sic*] Counts IV and V from Counts I, II and III, but [trial counsel] testified the reasons for his theory, and I don't believe that was an error.

. . . .

"He must show, of course, that [trial counsel's] performance was constitutionally deficient, and that he was prejudiced.

"[Trial counsel] here in his representation of the defendant, I believe, was more than reasonable in his assistance. It was more than competent. He had the advice of counsel and representation by effective counsel. I think it's clear from the record that

12

Judge Ruddick was intent and committed to giving Mr. Ojeda a very hefty sentence, the heaviest that he could give, and the facts support that.

"So I do not find that the petitioner, Mr. Ojeda's petition, should be granted. Therefore, it is not."

On May 2, 2017, Ojeda filed an untimely pro se notice of appeal, as well as a motion requesting to file his notice of appeal out of time, and a motion for appointment of appellate counsel. Ojeda argued that his appointed 60-1507 counsel failed to keep him updated on his case, never informed him that the district court denied his motion, and did not inform him of his right to an appeal. The State did not object to Ojeda's request to file his notice of appeal out of time. The district court granted Ojeda's motion to file his notice of appeal out of time, and this court granted Ojeda's motion to docket his appeal out of time.

DISCUSSION

Ojeda now appeals the district court's denial of his K.S.A. 60-1507 motion, alleging his trial counsel's ineffective assistance of counsel. Specifically, Ojeda argues the following in this appeal:

"1. [Trial counsel] failed to file a motion to sever Counts 1, 2, and 3 from Counts 4 and 5, because a conviction of the second crime was unlikely without the inference of intent of the first crime. [Trial counsel's] ineffective assistance of counsel lead [*sic*] to Mr. Ojeda's convictions in Counts 4 and 5.
"2. [Trial counsel] made Mr. Ojeda take the stand in his own defense, which lead [*sic*] to Mr. Ojeda making incriminating statements that lead [*sic*] to his convictions in Counts 1 through 5. Without those incriminating statements, Mr. Ojeda would likely not have been found guilty. [Trial counsel's] ineffective assistance of counsel led to Mr. Ojeda's convictions.

13

"3.  [Trial counsel's] cumulative errors in representing Mr. Ojeda lead [*sic*] to his convictions in Counts 1 through 5, thus violating Mr. Ojeda's right to effective assistance of trial counsel."

*Standard of Review and Legal Standard*

When, as here, the district court conducted a full evidentiary hearing of the defendant's 60-1507 motion, and made findings of fact and conclusion of law, this court applies the bifurcated standard of review typically applied in civil proceedings. See *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021). This court first determines "whether the district court's factual findings are supported by substantial competent evidence" and whether those factual findings support the district court's legal conclusions. *Khalil-Alsalaami*, 313 Kan. at 486 (quoting *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 [2007]). This court exercises unlimited review over the district court's legal conclusions and its decision to grant or deny the 60-1507 motion. 313 Kan. at 486.

Substantial competent evidence is legal and relevant evidence which a reasonable person might accept as sufficient to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019); see *Khalil-Alsalaami*, 313 Kan. at 486 (explaining that substantial competent evidence possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved). When "reviewing a district court's factual findings for substantial competent evidence, appellate courts do not 'reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence.'" *Khalil-Alsalaami*, 313 Kan. at 486 (quoting *State v. Sanders*, 310 Kan. 279, 294, 445 P.3d 1144 [2019]).

This court analyzes claims of ineffective assistance of trial counsel under a two-prong test, first determining whether the defendant has shown that defense counsel's

14

performance was deficient. See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984); see also *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting the test articulated in *Strickland*); *Khalil-Alsalaami*, 313 Kan. at 485. If the defendant satisfies the first prong, the court then determines whether there is a reasonable probability that, absent defense counsel's errors, the result would have been different. See *Khalil-Alsalaami*, 313 Kan. at 485.

"To establish deficient performance under the first prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Khalil-Alsalaami*, 313 Kan. at 485 (quoting *Strickland*, 466 U.S. at 688). When analyzing this prong, this court affords deference to the attorney's strategic decisions and past performance must be viewed "free from the distorting effects of hindsight." *Khalil-Alsalaami*, 313 Kan. at 485.

> "'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Khalil-Alsalaami*, 313 Kan. at 485-86 (quoting *Strickland*, 466 U.S. at 689).

Under the second prong, the defendant must show that defense counsel's deficient performance prejudiced them. To demonstrate prejudice, the defendant must establish with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. *Khalil-Alsalaami*, 313 Kan. at 485. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before

the judge or jury.'" *Khalil-Alsalaami*, 313 Kan. at 486 (quoting *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 [2012]).

If counsel made a strategic decision after making a thorough investigation of law and facts relevant to plausible options, then counsel's decision is "'virtually unchallengeable.'" *State v. Butler*, 307 Kan. 831, 854, 416 P.3d 116 (2018) (quoting *State v. Coones*, 301 Kan. 64, 74-75, 339 P.3d 375 [2014]). Additionally, strategic decisions after a less-than-complete investigation are reasonable to the extent that reasonable professional judgments support limiting the investigation. *Butler*, 307 Kan. at 854; *Strickland*, 466 U.S. at 690-91.

> "'In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Butler*, 307 Kan. at 854 (quoting *Coones*, 301 Kan. at 74-75, which in turn quotes *Strickland*, 466 U.S. at 690-91).

*The district court did not err in denying Ojeda's claim that his trial attorney rendered ineffective assistance of counsel by not severing counts one, two, and three from counts four and five.*

Ojeda claims that the district court erred in denying his claim that his trial attorney rendered ineffective assistance of counsel for failing to file a motion to sever counts one, two, and three from counts four and five. Ojeda argues that trial counsel was aware of this option because he discussed the possibility of severance during an argument in support of another motion, but his failure to pursue it "amounts to deficient performance." In support of his argument, Ojeda contends that the jury would not have convicted him of counts four and five without the inference of intent from counts one, two, and three.

16

Trial counsel attempted to have count five dismissed before trial. When the district court denied the motion to dismiss count five, trial counsel made the strategic decision to try the counts relating to the separate attacks together. He testified that he considered the potential impact on Ojeda's sentencing if he were convicted in one case and then his criminal history score would increase for the second case. Additionally, as the State notes, even if the district court severed the cases, the State had many options to eliminate any potential benefit to Ojeda by filing to join the cases into a single trial, deciding the order in which the cases would be tried, and seeking admittance of the evidence from the first attack in the second trial pursuant to K.S.A. 2009 Supp. 60-455(d). Accordingly, the entire purpose for which Ojeda claims his trial attorney should have filed a motion to sever would likely not have been achieved.

The district court, in its proper role as a fact-finder, assessed the credibility of the witnesses and determined that Ojeda's testimony at the K.S.A. 60-1507 hearing lacked credibility. The district court determined that trial counsel's testimony was "credible and not deficient in any way." This court defers to the district court's judgment on the credibility of witnesses. See *Khalil-Alsalaami*, 313 Kan. at 486. In evaluating the record and testimony, the district court determined not only that trial counsel's decisions regarding his defense strategy were reasonable, but that he had "very good reasons for his theory of the defense."

Trial counsel testified that his strategic decision not to file a motion to sever the counts was based on four considerations:
(1) the likelihood of the motion prevailing;
(2) the likelihood of the motion achieving the desired result;
(3) Ojeda's ultimate exposure at sentencing after separate trials; and
(4) the general nature of the defense.

17

Accepting the district court's determination that his testimony was credible, the strategic decision not to file a motion to sever the counts was not unreasonable or deficient.

The strategic reasons for not filing a motion to sever were reasonably grounded in law. First, the State argues it could have sought joinder of the charges into a single trial pursuant to K.S.A. 22-3202(1) which provides:

> "Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Ojeda's attacks on H.T. and C.H. were strikingly similar, and the likelihood of the State successfully seeking joinder was high. Second, even if a motion to sever counts four and five had been granted, the State still could have sought to introduce evidence of Ojeda's attack on H.T. in the trial for counts four and five (the counts relating to the attack on C.H.) pursuant to K.S.A. 2009 Supp. 60-455(d). Accordingly, even a granted motion to sever the counts might not have achieved the purpose for which it was filed in the first place. Finally, severing the counts could have increased Ojeda's ultimate exposure at sentencing in separate trials. Ojeda faced greater incarceration if tried and convicted of all the counts in separate trials. Therefore, the strategic decision to try all the counts arising from both attacks in a single trial likely limited Ojeda's ultimate sentence for the five counts.

Trial counsel's credible testimony demonstrates a well-informed and reasonable strategic decision based upon diligent legal research. This strategic decision is virtually unchallengeable. See *Butler*, 307 Kan. at 854. Accordingly, the district court did not err in finding that Ojeda failed to demonstrate that his trial counsel provided deficient

18

performance by failing to seek severance of counts four and five from the first three counts.

*The district court did not err in denying Ojeda's claim that his trial attorney provided ineffective assistance of counsel by advising Ojeda to testify.*

Ojeda claims that his trial attorney provided ineffective assistance because he told Ojeda that Ojeda *had* to take the stand and testify at trial. Trial counsel testified that he advised Ojeda to testify but ultimately let Ojeda make the decision. The district court resolved this conflicting evidence and determined that Ojeda's testimony was unreliable. This court does not reweigh the district court's witness credibility determination or resolve conflicts in the evidence, and accepts the district court's determination that trial counsel provided credible testimony that contradicted Ojeda's unreliable testimony. See *Khalil-Alsalaami*, 313 Kan. at 486-87.

Ojeda further argues that trial counsel's decision to advise Ojeda to testify constituted ineffective assistance of counsel because Ojeda's trial testimony ultimately alienated the jury and led it to convict on all counts. Trial counsel testified that he recommended that Ojeda testify for strategic purposes, prepared Ojeda for the testimony, and limited the scope of his direct examination to the attack on H.T. for the purpose of limiting the State's ability to cross-examine Ojeda about the attack on C.H. The record contains substantial competent evidence to support trial counsel's testimony and the district court's reliance upon it. Trial counsel carefully limited the scope of his direct examination of Ojeda and prevailed in an objection when the State sought to question Ojeda beyond that narrow scope. Moreover, in his closing argument, trial counsel emphasized that the evidence only supported *attempted* rape and kidnapping, not *completed* rape, which is consistent with his testimony that he advised Ojeda to testify for the strategic purpose of avoiding a severity level one felony conviction for the attack on H.T.

19

The district court did not err in finding that Ojeda failed to show that his trial attorney provided ineffective assistance of counsel by advising and preparing Ojeda to testify regarding his attack of H.T.

*The district court did not err in denying Ojeda's cumulative-error claim.*

Both of Ojeda's claims of ineffective assistance of counsel were properly denied by the district court. Accordingly, there was no error, and "[t]he cumulative error rule does not apply if there are no errors or only a single error." *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). As Ojeda has failed to establish any error, the district court properly denied Ojeda's cumulative-error claim.

CONCLUSION

The district court properly denied Ojeda's K.S.A. 60-1507 motion for ineffective assistance of trial counsel after conducting a hearing and making factual findings that are supported by substantial competent evidence. Ojeda's trial counsel investigated, researched, and made strategic decisions that this court will not second-guess. Accordingly, the judgment of the district court is affirmed.